503 So.2d 203 (1987)
Wilbert VERRETT and Joyce Verrett
v.
LOUISIANA WORLD EXPOSITION, INC., et al.
No. CA-5950.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1987.
Rehearing Denied March 19, 1987.
Writ Denied May 29, 1987.
Trevor G. Bryan, Ethel A. Simms, Jefferson, Bryan & Gray, New Orleans, for appellant.
James B. Irwin, Quentin F. Urquhart, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for Louisiana World Exposition, Inc., and U.S. Fidelity & Guar. Co.
Before CIACCIO, WARD and ARMSTRONG, JJ.
WARD, Judge.
This tort suit was filed by Wilbert Verrett, a cement mason, and his wife against Louisiana World Exposition, Inc. ("LWE") to recover damages for injuries he sustained while employed by Landis Construction Co., the contractor responsible for building the "Wonderwall" on the site of the 1984 Worlds Fair. We affirm the Trial Court's dismissal of Verrett's claims because we find that LWE had no duty to protect Verrett from the hazard which caused his injuries.
Landis Construction Co., Verrett's employer, entered into a contract on February 9, 1983 with LWE for the construction of the Wonderwall, "a wall of figures, fountains, concession booths, towers, performance areas, platforms and special framing" to be located primarily upon the neutral ground of South Front Street on the Fair *204 site. The project included the construction of concrete columns and cubicles, and it was the task of Verrett and the other cement masons to level and smooth the concrete as it was poured to form these structures. While the masons worked, they stood or knelt upon a platform supported by scaffolding, which was dismantled, moved and reassembled as work progressed along the Wonderwall. On the morning of September 14, 1983, while walking on the platform, Verrett lost his balance and fell backwards off the side of the scaffold to the pavement below, sustaining injuries to his back.
After trial before a jury, the District Court dismissed Verrett's suit in accordance with the jury's responses to interrogatories which found:
1) LWE was not Verrett's statutory employer;
2) LWE was negligent in a manner which was a proximate cause of the accident;
3) LWE bears 25 percent of the negligence for the accident;
4) Verrett was negligent in a manner which was a proximate cause of the accident;
5) Verrett bears 75 percent of the negligence for the accident;
6) Verrett assumed the risk.
Verrett appeals, assigning as error the application of both assumption of risk and comparative negligence as well as the Trial Judge's failure to instruct the jury and submit interrogatories on the issues of strict liability and damages for loss of consortium. LWE answered the appeal, assigning errors regarding the statutory employer issue and the question of LWE's duty to Verrett and the jury's finding that LWE was negligent. We have chosen to first address the issue of LWE's duty to Verrett because it is dispositive of the case. We affirm the dismissal of Mr. and Mrs. Verrett's suit because LWE had no duty under a negligence theory to protect Mr. Verrett from the risk of falling from the scaffolding which was entirely under the control of Verrett's employer, Landis Construction Company, and the evidence was not sufficient to require the jury to consider LWE's liability under a strict liability theory. We, therefore, do not reach the other interesting issues raised by the appeals.
In this case LWE occupies the same position as a property owner who generally has no duty to protect the employees of an independent contractor, such as Landis Construction Co., from dangerous conditions brought onto the land and maintained and controlled by the independent contractor. We believe the jury's finding that LWE was negligent, which necessarily includes the finding of a duty, was manifestly erroneous.
The contract between Landis and LWE, which was placed in evidence, clearly shows that Landis was an independent contractor. The contract provides that Landis "shall be fully responsible for the general management of the construction operation." It also provides that Landis "shall be solely responsible for all construction means, methods, techniques, sequences, and procedures," and specifies that Landis "shall take all reasonable precautions for the safety of and shall provide all reasonable protection to prevent damage, injury or loss to all employees on the Work...." The contract, while not conclusively determinative of the issue, is strong evidence that Landis was an independent contractor. But it is not the only evidence. Numerous witnesses, employees and former employees of both Landis and LWE, testified that the safety of Landis employees was entirely the responsibility of Landis.
Plaintiffs' counsel contends that despite the terms of the contract which indicate that Landis was solely responsible for the safety of its employees, LWE did in fact take an active role in the supervision of the construction of the Wonderwall  to such an extent that it assumed a duty for the safety of Landis employees. The evidence does not support this contention. The LWE Project Coordinator for the Wonderwall testified that he was responsible only for schedule and budget and that he had nothing to do with construction except to *205 insure that it conformed to the contract. Testimony of other witnesses, from both Landis and LWE, corroborated that although LWE personnel were constantly on the site, they were not concerned with the details for the construction of the Wonderwall.
This evidence places this case squarely within the rule stated in Cornish v. Ford, Bacon & Davis Construction Corp., 304 So.2d 361 (La.App. 1st Cir.) writ refused, 305 So.2d 123 (La.1974):
Under our well established law, an owner is not liable to third parties for the negligent acts of a contractor where the contractor undertakes performance of a work pursuant to a contract in which the owner furnishes plans and specifications, and possesses only the right to insist that the job be performed in accordance with the contract plans and specifications.
304 So.2d at 366.
The only evidence in this record of any duty which LWE had to protect others indicated that LWE was responsible for the safety of visitors to the site, i.e., the press, potential concessionaires, dignitaries, etc. There is no evidence, however, to show that this duty extended to Landis employees.
Nonetheless, Verrett's counsel elicited testimony from LWE witnesses to the effect that if the LWE project coordinator or another LWE employee observed an obviously unsafe condition or practice involving Landis employees, then the LWE employee probably would have had a "moral" obligation to recommend corrective measures to Landis, and Landis probably would have followed LWE's recommendations. In spite of this testimony, speculation regarding a moral obligation is not sufficient to show that LWE owed Verrett a duty, the breach of which would constitute negligence on the part of LWE.
The jury was allowed to consider only negligence, and not strict liability, in determining the duty LWE owed to Verrett because the Trial Judge found the evidence insufficient to require an instruction to the jury on strict liability. Verrett asserts on appeal that the issue of strict liability under C.C. art. 2317 should have been submitted to the jury, and hence, even if we find that LWE was not negligent, LWE is nonetheless liable as the custodian of an unreasonably dangerous thing. Verrett reasons that the Wonderwall was owned by LWE and was in its custody, and further that "it was built with the columns in such a way that `holes' were created in the platform on which the cement masons worked.... It was built near to high tension wires, purposefully for aesthetic reasons...." This assertion, although it may be true, fails to state a claim against LWE under Article 2317 because it was not a defect in the wall itself, but rather in Landis' scaffolding, which allegedly caused Verrett's injury. It was undisputed that the scaffolding, platforms and concrete forms were either owned or leased by Landis, and as we pointed out above, LWE had no control over Landis' erection and placement of the scaffolding, platforms and forms.
Verrett additionally alleges that "it was consciously decided at safety sessions that they [presumably LWE and Landis] balance the safety factors in favor of not having guardrails on the working platforms rather than risk contact with the high tension wires above the Wonderwall." This assertion that there was a decision to forego guardrails on the platforms and that LWE participated in that decision is based upon the testimony of witnesses who speculated as to the reason for the lack of guardrails. Their speculations are insufficient evidence upon which to require that the jury consider LWE's strict liability for the lack of guardrails on the platforms. Nor does it meet the standards of evidence necessary to prove negligence of LWE employees. Hence, the Trial Judge did not err in refusing to instruct the jury that LWE could be strictly liable to Verrett, and the jury erred in finding LWE negligent.
For the foregoing reasons, the judgment of the Trial Court is affirmed. All costs of appeal to be paid by Wilbert and Joyce Verrett.
AFFIRMED.
CIACCIO, J., concurs with reasons.
*206 CIACCIO, Judge, concurring with additional reasons.
I concur in the majority opinion and the result reached. I also find that Louisiana World Exposition, Inc. was Mr. Verrett's statutory employer. A principal is immune from tort suits by the employees of its contractor. Smith v. Cotton's Fleet Service, Inc., 500 So.2d 759 (La., 1987). I would hold, therefore, that worker's compensation benefits are plaintiffs' exclusive remedy.