552 So.2d 565 (1989)
Ricky Wayne MASSEY, et al, Plaintiffs-Appellants,
v.
CENTURY READY MIX CORPORATION, et al, Defendants-Appellees.
Nos. 20879-CA, 21248-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
Writ Denied January 5, 1990.
*566 Leger & Mestayer by Franklin G. Shaw, Walter J. Leger, Jr., New Orleans, for plaintiffs-appellants.
Luffey, Deal & Norris by Philip T. Deal, Monroe, Cotton, Bolton, Hoychick & Doughty by John Hoychick, Jr., Rayville, Blackwell, Chambliss, Hobbs & Henry by Larry Arbour, Monroe, for defendants-appellees.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
This is an action brought by plaintiffs, Ricky Wayne Massey and Donna Lively Massey, individually and on behalf of their minor children, Richard Zachary Massey and Jacob Deshea Massey, against defendants, Century Ready Mix Corporation (Century), Commercial Union Insurance Company (Commercial Union), Ohio General Insurance Company (Ohio General), Lincoln Builders of Ruston, Inc. (Lincoln), United States Fidelity & Guaranty Company (USF & G), and Tifton Aluminum Co., Inc. (Tifton), for damages due to Mr. Massey's personal injuries suffered on July 14, 1987, at the Tifton Aluminum Plant in Delhi, Louisiana.
At the time of the accident, plaintiff was employed as an iron worker and steel erector by Ranger Erectors, Inc. (Ranger). Ranger was engaged in erecting a steel building at a plant in Delhi, Louisiana. Tifton, the owner of the plant, had contracted with Lincoln to install an addition to its remelt facility. Lincoln had then arranged to have Ranger provide the necessary iron work.
The accident in question occurred when an 18-wheel tractor trailer truck, owned by Century and driven by one of its employees, backed onto an access road on the construction site and into a column of the partially erected building, knocking the plaintiff and another iron worker off the *567 structure some 40 feet to the ground below. Plaintiff suffered severe skull fractures, a broken clavicle, fractured ribs, and a fractured pelvis. Plaintiff remained hospitalized from July 14, 1987, to September 12, 1987, initially in a comatose state, and has undergone intensive neurologic rehabilitation since that time.
The case was set for a jury trial to begin on March 20, 1989. On September 15, 1988, however, Ohio General, the comprehensive general liability insurer of Century, filed a motion for summary judgment, contending that it did not provide coverage for the liabilities asserted against its insured because of an automobile exclusion in its policy. This motion for summary judgment was subsequently granted, and judgment was entered on October 6, 1988.
After the granting of the motion for summary judgment, plaintiff's claims against Century and Commercial Union, with whom Century had obtained a business auto policy, were settled for the policy limit of $600,000 per accident plus legal interest, reserving all rights against Ohio General.
On November 15, 1988, Lincoln and its liability insurer, USF & G, filed a motion for summary judgment, alleging tort immunity as the plaintiff's statutory employer. Additionally, on January 10, 1989, Tifton filed a motion for summary judgment, alleging that it had no duty as owner of the premises to plan and supervise construction or to oversee safety, which it argued was the legal obligation of the general contractor, Lincoln. On January 26, 1989, these motions were also granted.
Plaintiffs now appeal the three adverse summary judgments.

I.

JUDGMENT IN FAVOR OF OHIO GENERAL

(General Liability Insurer of Century Employer of Truck Driver causing accident)
Plaintiffs' claims against Ohio General revolve around the automobile exclusion in its policy, which reads in part as follows:
This insurance does not apply:
....
(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) Any automobile or aircraft owned or operated by or rented or loaned to any insured, or
(2) Any other automobile or aircraft operated by any person in the course of his employment by any insured....
Plaintiffs have conceded that the driver of the Century truck who backed into the column from which the plaintiff fell would be excluded from coverage under Ohio General's automobile exclusion, if such exclusion is found applicable, because his actions involved the use of an automobile.[1] However, plaintiffs allege that the accident was caused in part by the independent negligence of another Century driver who had previously made a delivery to the soon-to-be accident site and who failed to warn the driver of the vehicle which struck the column of the dangerous situation or assist him by acting as a flagman. Plaintiffs claim that this first driver's negligence did not involve the use of an automobile and would therefore not fall under the Ohio General automobile exclusion. We disagree.
Even if we were to assume that this first driver was negligent in not warning or assisting the second driver, this negligence would not be covered under the Ohio General policy. Louisiana jurisprudence has consistently held that liability insurers such as Ohio General avoid coverage due to automobile exclusions which are the same or similar to the one quoted above in circumstances similar to the instant case. The leading Louisiana case is Picou v. Ferrara, 412 So.2d 1297 (La.1982). In Picou, plaintiff was injured when his motorcycle was struck by an automobile being operated *568 by Ferrara, while Ferrara was on an errand for his employer. Plaintiff, in addition to allegations of negligence in the operation of the vehicle by Ferrara, also alleged that the employer had negligently entrusted the vehicle to his employee. On the basis of this later allegation, the employer sued Lumbermans Mutual Casualty Company (Lumbermans), its general liability insurer. Lumbermans filed a motion for summary judgment seeking dismissal based upon the policy's exclusion of liability for damages arising out of the use of a motor vehicle. The exclusionary language in Lumbermans' policy was identical to the exclusionary language in Ohio General's policy.
The trial court and the court of appeal had denied Lumbermans' motion for summary judgment, reasoning that the employer had sent an employee on an errand when it knew or should have known of physical infirmities that affected the employee's ability to safely operate a vehicle. However, the Louisiana Supreme Court reversed, finding that the damages the plaintiff incurred clearly arose out of the use of an automobile. The court held:
Liability for all injuries arising out of the use of automobiles is excluded (except for parking or nonowned cars on the premises). Liability for injuries arising out of automobile deliveries are therefore excluded, even though one cause of the injury might have been the negligent choice of the deliveryman who drove the car, and another might have been the employer's responsibility for the employee's acts. The use of the automobile, a risk excluded from the policy, is a common and essential element in each theory of liability.
Picou v. Ferrara, supra, at 1300.
In its inquiry as to whether the harm arose out of the use of an automobile, the court focused on a single question: Was the use of the automobile an essential element in the theory of liability? It found that, whether the theory of liability was the negligence of the driving employee, the negligence of the employer in choosing the driver, or the employer's vicarious liability for the employee's acts, each theory revolved around the use of the automobile. Likewise, the use of the truck in causing the accident in this case was a common and essential element in all of the plaintiffs' theories of liability, whether the theory is based on the negligence of the driver of the truck who hit the column, or the negligence of the first driver in failing to warn or assist the driver of the second truck.
Shortly after Picou, in Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982), the Louisiana Supreme Court provided a two-prong test to be used in analyzing whether conduct arises out of the use of an automobile under an automobile liability policy. The court stated that the proper analysis was to consider two separate questions:
(1) Was the conduct of the insured of which the plaintiff complains a legal cause of the injury?
(2) Was it a use of the automobile?
The court held that coverage would exist under an automobile liability policy if both of these questions were answered affirmatively.
Plaintiffs quote the following language from Carter v. City Parish Government of East Baton Rouge, supra, in an effort to support their contention that the first driver's conduct did not involve the use of the truck in this case.
On the other hand, if the insured's conduct of which the plaintiff complains, is not the actual operation of the vehicle, whether it constitutes use of the vehicle may be a much more difficult question than whether it was a legal cause of the plaintiff's injury.
Although this language does state that it may be more difficult to find the use of a vehicle when the insured is not operating the vehicle, it certainly does not preclude such a finding. For example, in Jones v. Louisiana Timber Company, Inc., 519 So.2d 333 (La.App. 2d Cir.1988), an independent contractor sued a timber company, its president, and the company's general liability insurer, arising out of an accident in which the cable on the trailer owned or leased by the timber company snapped and *569 threw the contractor to the ground. The court held that the timber company's conduct in negligently maintaining the trailer with an unsafe cable attachment for the contractor's use was within the general liability policy's exclusion for damages arising from the "use" or "maintenance" of an automobile, despite the fact that no timber company personnel were operating the trailer.[2] Relying on Carter, supra, this court reasoned as follows:
In order for the conduct to arise out of use, the automobile must be essential to the theory of liability; the specific duty breached by the insured must flow from use of the automobile. If the duty existed independently of the automobile, then liability does not arise out of use even though the duty could have been discharged by the use of an automobile.
Jones, supra, at 336 (emphasis ours).
Plaintiffs strongly rely on LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La. 1978). In LeJeune, the comprehensive general liability insurer of the sheriff's department was held liable when the sheriff's deputy failed to secure an intersection through which a funeral procession could safely proceed. Plaintiffs quote the following language from LeJeune in support of their position:
An exclusion clause in a liability policy is strictly construed against the insurer and in favor of coverage, if more than one interpretation is possible.... Consonant with this principle, the decisions we could find hold that, where the automobile use exclusion clause is sought to be applied so as to avoid coverage for injuries otherwise covered by a general liability policy, the exclusion clause does not apply where the insured's act is a result of negligence independent of, even though concurring with, his use of an automobile.
LeJeune, supra, at 479 (citations omitted).
Plaintiffs claim that the first driver's negligence was independent of, even though concurring with, the use of the Century truck by the second driver. However, plaintiffs fail to note other language in LeJeune which does not support their position. The court held in that case that the automobile exclusion in the law enforcement officers' professional liability policy did not exclude coverage of the deputy's negligence causing the collision, stating:
Although he could and should have used his police car to block the intersection and warn approaching drivers of the dangerous situation, it was not any use or abuse of his vehicle itself that led to his liability. Rather, it was his failure to supersede the automatic traffic signal and warn traffic approaching on the right-of-way highway that a funeral procession was going to pass through it, a function of his duties as law enforcement officer.

The basis of Deputy Smith's liability is his negligent failure to perform this law enforcement duty, the risk specifically insured by Western World's policy. The circumstance that the deputy was to use his automobile in the performance of this duty was incidental to the breach of this law enforcement duty. His liability is not based upon the negligent use of his vehicle, but rather upon his negligence in failing to secure the intersection so as to alert approaching traffic of the danger involved. The damages to the injured victim arose out of the deputy's breach of his law enforcement duties, not from the deputy's use of his automobile.
LeJeune, supra, at 479 (emphasis ours).
We believe that the LeJeune case can be distinguished from the instant case. In LeJeune, the deputy's liability arose not from the use of his vehicle but from his negligent failure to perform his law enforcement duties. In fact, the Picou court specifically distinguished LeJeune as follows:
This court held Western World's liability arose, not from the use of an automobile, *570 but from the deputy's breach of his law enforcement duties in failing to secure the intersection to allow the cortege to proceed safely. The deputy could have protected the intersection with or without the use of his vehicle. He could have parked the car on the roadside and personally directed traffic, or he could have blocked the intersection with the car. It was his failure to guard the intersection that resulted in the collision, not the use or nonuse of the automobile.
Picou v. Ferrara, supra, at 1299.[3]
In the instant case, the first driver could not have breached his duty to flag or warn the second driver had the second driver not been using the Century vehicle. Because this first driver's duty depended on the use of the Century vehicle, the vehicle is a common and essential element in the plaintiff's theory of liability, and therefore excluded under Ohio General's auto exclusion. In the terms of our Carter, the duty at issue is "not independent" of the vehicle that caused the accident.
Plaintiffs also make the argument that the driver of the first Century truck was a separate "insured," and that his independent acts of negligence should not be excluded from coverage under Ohio General's policy because his negligence did not involve the use of an automobile. They base this argument on the language of the auto exclusion itself which requires that the damage arise out of the use of an automobile "owned or operated by or rented or loaned to any insured" or any automobile "operated by any person in the course of his employment by any insured." They then note that the term "insured" as defined in the policy means any person or organization qualifying as an insured in the "Persons Insured" provision of the policy, and that "[t]he insurance afforded applies separately to each insured against whom claim is made or suit is brought...." Appellants submit that in order to find that coverage is excluded, the automobile must have been being utilized by "an insured," and that, because the insurance applies separately to each insured, only the use of the "insured" operating the truck which hit the column is excluded from the policy.
This contention fails for basically the same reasons outlined above with respect to the previous contention. The fact that the insurance afforded applies separately to each insured is irrelevant. The definition of an "insured" in the policy simply makes each driver a separate insured in the context of the exclusion. Any asserted negligence on the part of the second driver (by failing to warn or to flag) is dependent on the use of the truck which hit the column and cannot, in our judgment, be separated from it.
Plaintiffs also contend that Century is liable because of its negligence in not providing a backup alarm or a flagman, as required by the Occupational Safety and Health Administration regulations, 29 C.F.R. § 1926.601(b)(3) and (4). Plaintiffs claim that this alleged negligence is independent of negligence involving the use of an automobile and that it should not be excluded from coverage by Ohio General's policy under the automobile exclusion.
This same argument was addressed in United States Fidelity and Guaranty Company v. Employers Casualty Company, 672 F.Supp. 939 (E.D.La.1987), affirmed, 857 F.2d 289 (5th Cir.1988). In that case, an independent contractor's truck backed over and killed a worker. As in the instant case, the truck did not have backup warnings, nor was a flagman present. The general contractor had in effect at the time of the accident both an automobile liability policy, issued by USF & G, and a general liability policy, issued by Employers, whose pertinent policy provisions were identical to those of Ohio General and Commercial Union in this case. On motion for summary *571 judgment, the court found that the general liability insurance automobile exclusion mandated that the general liability insurer be found not to provide coverage for the general contractor's negligence in violating OSHA regulations, despite the plaintiffs' argument that, since the general contractor was being held liable on grounds of not providing a safe workplace to the decedent, his liability did not arise out of the use of an automobile within the meaning of the exclusion. The court held:
The insuring language of USF & G's Policy and the excluding language of Employers' Policy are written not in terms of the applicable standard of care, but in terms of the nature of the risk and resulting injury. The issue, for purposes of interpreting Employers' exclusion, is not why T & J's conduct was faulty, but whether T & J's liability for Freeman's death arose out of the use of the truck. Common sense and Louisiana case law require this Court to find that T & J's liability did arise out of the use of the truck.... In sum, T & J's breach of duty did not exist independent of the use of Varnado's truck, for without use of the truck, there would be no need for a back-up alarm or flagman.

United States Fidelity and Guaranty Company v. Employers Casualty Company, supra, at 942-943 (emphasis ours).
Similarly, even assuming that Century was negligent in violating safety regulations, such negligence could certainly not be found to exist independent of the use of the Century truck, and would be excluded from coverage by the Ohio General automobile exclusion.
Plaintiffs contend alternatively that the Ohio General automobile exclusion is not applicable in this case. They base this contention on the fact that the Ohio General policy is a "broad form" comprehensive general liability policy. They note the first exclusion in the policy reading as follows:
This insurance does not apply:
(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's product or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner....
They further note the definition of "incidental contract" in the Ohio General policy as follows:

I. CONTRACTUAL LIABILITY COVERAGE
(A) The definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the named insured's business.
Finally, plaintiffs note that the auto exclusion in the policy does not apply to this contractual liability coverage:

I. CONTRACTUAL LIABILITY COVERAGE
....
(C) The following exclusions applicable to Coverages A (Bodily Injury) and B (Property Damage) do not apply to this Contractual Liability Coverage: (b), (c)(2), (d), and (e).
Plaintiffs claim that these provisions expand the scope of coverage for which liability may be imposed upon the insured arising out of damage pursuant to a business contract, and that they specifically provide that the automobile exclusions are inapplicable when dealing with such a contract. We disagree.
We determine coverage does not exist under this theory because there is no contract between Century and plaintiffs to which these provisions could apply. Century did not assume any liability to the public generally or to the plaintiffs in particular under its contract with Lincoln to furnish materials to the job site. The elimination of the automobile exclusion applies only to liability assumed by contract. Therefore, the automobile exclusion remains applicable to the basic coverage.
For the reasons aforesaid, the summary judgment in favor of Ohio General is affirmed.

*572 II.

SUMMARY JUDGMENT IN FAVOR OF LINCOLN

(General Contractor of Improvements)

AND USF & G (Lincoln's General Liability Insurer)
Plaintiffs claim on appeal that the trial court erred in finding Lincoln to be Mr. Massey's statutory employer because the steel erection work in which he was engaged at the time of the accident was specialized per se. They claim that because the steel erection work was specialized and thus by definition was work that Lincoln was unable to perform, the work was not part of Lincoln's trade, business, or occupation which it had contracted to perform, or work which it undertook to execute, as required by LSA-R.S. 23:1032 and 23:1061 to avoid tort liability.[4]
Plaintiffs also attempt to rebut the defendants' argument that the summary judgment was proper under the "two-contract" statutory employer defense. They argue that the Louisiana Supreme Court, in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), intended to abolish the "two contract" rule, since to do otherwise would shield the general contractor from both tort liability and liability for worker's compensation, the latter being covered by the subcontractor.
These two contentions, that the work of the subcontractor was specialized and that Berry rejected the two-contract statutory employer defense, were recently resolved adversely to the plaintiff by this circuit in Bradford v. Village Insurance Co., 548 So.2d 106 (La.App. 2d Cir.1989). In that case this circuit held:
The holding of Berry does not apply to the "two contract" defense since Berry involved an owner rather than a general contractor. Additionally, this argument by the plaintiff is in direct conflict with the written reservation of the "two contract" defense by the Court in footnote three:
3. The discussion throughout the remainder of this opinion does not deal with what may be called the "two contract" statutory employer defense. La.R.S. 23:1032, 1061. In that situation, an owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the "sub" to do the whole or a part of the total job contracted by the "general." Under this contractual relationship, the contract work of the "sub" has been held in *573 decisions of the intermediate courts to be automatically within the trade, business or occupation of the "general." See Lewis, [v. Exxon Corp., 441 So.2d 192 (La.1983) ] supra (in dicta); Borne v. Ebasco Services, Inc., 482 So.2d 40 (La.App. 5th Cir.1986); Thornton v. Avondale Shipyards, Inc., 479 So.2d 7 (La.App. 5th Cir.1985); Brown v. Ebasco Services, Inc., 461 So.2d 443 (La. App. 5th Cir.1984), writ denied in part 462 So.2d 1235 (La.1985); McCorkle v. Gulf States Utilities Co., 457 So.2d 682 (La.App. 1st Cir.1984); Juris v. Lama Drilling Co., Inc., 457 So.2d 135 (La.App. 2d Cir. [1984]), writ denied 460 So.2d 1045 (La.1984); Certain v. Equitable Equipment Co., 453 So.2d 292 (La.App. 4th Cir. [1984]), writ denied 459 So.2d 535 (La.1984); Richard v. Weill Construction Co., Inc., 446 So.2d 943 (La.App. 3rd Cir. [1984]), writ denied 449 So.2d 1356 (La.1984).
....
The general contractor was deemed to be immune from tort liability and named the statutory employer of the employee of its subcontractor in Williams v. Metal Building Products Co., Inc., 522 So.2d 181 (La.App. 5th Cir.1988). The Supreme Court denied writs in Williams, 530 So.2d 82 (La.1988), and stated, "There is no error of law."
Bradford v. Village Insurance Co., supra, at 107, 108.
Thus, Bradford points out that Berry did not obviate the "two-contract" concept of statutory employment. The question of whether the subcontractor's work is specialized is irrelevant in the context of "two-contract" cases. Bradford v. Village Insurance Co., supra; Rogers v. Gervais Favrot Co., Inc., 537 So.2d 381 (La.App. 4th Cir.1988). Cf. Juris v. Lama Drilling Company, Inc., 457 So.2d 135 (La.App. 2d Cir.1984), writ denied, 460 So.2d 1045 (La. 1984). We therefore agree with the trial court that Mr. Massey was the statutory employee of Lincoln and affirm the summary judgment in Lincoln's favor.

III.

SUMMARY JUDGMENT IN FAVOR OF TIFTON

(Owner of the Premises)
The trial court found that Tifton had no duty as owner of the premises to plan and supervise construction or to oversee safety, these duties being those of the general contractor, Lincoln.
Indeed, a property owner is not liable to third parties for the negligence of a contractor where the owner simply furnishes plans and specifications and possesses only the right to insist that the job be performed in accordance with those plans and specifications. Verrett v. Louisiana World Exposition, Inc., 503 So.2d 203 (La. App. 4th Cir.1987), writ denied, 506 So.2d 1229 (La.1987); Smith v. Crown Zellerbach, 486 So.2d 798 (La.App. 1st Cir.1986), writ denied, 489 So.2d 246 (La.1986).
Plaintiffs do not disagree with the aforesaid proposition but contend that there are two exceptions to this rule. Citing Grammer v. Patterson Services, Inc., 860 F.2d 639 (5th Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 3190, 105 L.Ed.2d 698 (1989), they contend that a principal may not avoid liability if it contracts out inherently or intrinsically dangerous work or retains "operational control" of the contract work. In so arguing, they concede that the instant work is not inherently or intrinsically dangerous. Thus, they argue that Tifton is liable because it retained operational control over the work.
We have no difficulty determining that the contract between the parties establishes Lincoln as an independent contractor, the terms of which did not give Tifton operational control. A document entitled "Engineering Standard, Construction Department 33.052," made part of the contract between Tifton and Lincoln for the instant construction, does call for adequate reverse signal alarms on trucks or for the use of flagmen in the absence of such alarms. However, other portions of the contract specifically delegate responsibility for the general management of the construction *574 operation and for safety concerns to Lincoln.
Article 11 of the general conditions of the contract between Tifton and Lincoln states: "Contractor shall be an independent contractor, and Owner will have no right to exercise supervision as to the manner or method of doing the Work." Similarly, Article 14A of the general conditions reads as follows:
A. Contractor shall take all necessary precautions for the safety of employees, shall comply with such regulations as Owner may from time to time establish, including, without limitation, Alcoa Engineering Standard 33.052, Safety and Health, Fire Protection and Security Procedures for Outside Contractors and Subcontractors, and Work site regulations, and shall comply with all federal, state and local safety laws and regulations, including without limitation, Occupational Safety and Health Act standards for the construction industry, and Mine Safety and Health Act standards.
(emphasis ours.)
Finally, Paragraph 24, bearing the title "Evaluation of Contractor" from the aforementioned Engineering Standard 33.052 states as follows:
The Owner's safety representative or the Owner's field construction manager has the right (but not the obligation) to determine if the Contractor is performing in accordance with the regulations set forth in this Standard. The items presented in Alcoa Standard 33.052.1 may be used to evaluate Contractors. Evaluations may be made at least once a month and also before the completion of a contract. Deficiencies shall be corrected. Continued unsatisfactory evaluation and injury experience may serve to disqualify the Contractor for further work from the Owner.
(emphasis ours.)
Moreover, the record establishes that Tifton did not, as a matter of fact, exercise operational control over Lincoln. Mr. Nathaniel Mixon, project manager for Lincoln, stated in his deposition that the work of coordinating subcontractors during the project, the long-range planning, as well as the day-to-day scheduling of operations, was the responsibility of Lincoln personnel. He stated that when Lincoln met with its various subcontractors, Tifton personnel were not involved. He also stated that the primary purpose of any Tifton personnel being at the construction site was to insure quality control in order that the remelt facility would be built in accordance with the plans and specifications provided to Lincoln.
Additionally, Paul Jarell, remelt superintendent for Tifton, stated that he visited the construction site but acted only as a liaison between Tifton and Lincoln Builders should any questions arise concerning the specifications or modifications. He stated that he did not attempt to supervise construction or safety as he was not employed for that purpose and was not knowledgeable in that area. He never inspected the plans for construction, and no one from Tifton that he knew of was designated to follow construction on a daily basis. His employment or expertise was as superintendent of production which was to take place in the completed remelt facility. He was not assigned to any functions regarding construction of the remelt facility.
Moreover, we believe we would be remiss if we did not point out that Grammer v. Patterson Services, Inc., supra, may misstate the Louisiana law on the subject. In correctly pointing out that it is a well-settled rule of law in Louisiana that a principal is not liable for the offenses of its independent contractor, Grammer asserts that there are two exceptions to this rule. These are said to be that (1) a principal cannot escape liability by contracting out ultrahazardous activity, and (2) a principal may be liable for the acts of an independent contractor "over which it has exercised operational control or which it has expressly or impliedly authorized." Grammer v. Patterson Services, Inc., supra, at 641. It is the characterization of the exceptions which causes us concern.
Grammer relies squarely on Hawkins v. Evans Cooperage Co., Inc., 766 F.2d 904 (5th Cir.1985), as authority for the two *575 exceptions. Hawkins does indeed state the two exceptions as asserted by Grammer. For this proposition, Hawkins cites Wallace v. Oceaneering International, 727 F.2d 427 (5th Cir.1984); McCormack v. Noble Drilling Corporation, 608 F.2d 169 (5th Cir.1979); and Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La.App. 1st Cir.1978), writ denied, 366 So.2d 575 (La.1979).
Wallace does not support the proposition, however. It is simply a Jones Act case involving the question of the operational control which a Gulf of Mexico well owner retained over its drilling contractor. McCormack also involves the same question.
Ewell v. Petro Processors of Louisiana, Inc. is, from our research, the cornerstone of the Louisiana law on the subject. However, it must be emphasized that Ewell does not speak in terms of two exceptions. Likewise, none of the source provisions cited by Ewell speak in terms of two exceptions, or "operational control." See Ewell, supra, at 607, 608, and the citations contained therein.
Ewell, in espousing the general concept that a principal is not liable for the offenses of an independent contractor occurring during the course of the contract, goes on to point out that an "important exception to this rule ... is that if the work is inherently or intrinsically dangerous...." Ewell, supra, at 606. Ewell then notes that where there is an available safe method using "adequate precautions" to perform the inherently or intrinsically dangerous activity, but the work is nevertheless done in an unsafe manner, then the principal will be liable if he has "expressly or impliedly authorized the particular manner which will render the work unsafe and not otherwise." Ewell, supra, at 606, 607.
Thus it seems clear that the point in Ewell was that if there are certain precautions which will make an inherently dangerous job safe, and yet the work is done in an unsafe manner, the principal is liable if he expressly or implicitly authorizes the particular unsafe method of performing the work. The express or implicit authorization, then, is part and parcel of, or a corollary to, the idea that the work must be inherently or intrinsically dangerous in the first instance. Said more simply, it appears that there is only one exception per Ewell, and if the work is not inherently dangerous in the first place, the question of what actions the principal may have expressly or implicitly authorized is of no moment. Guillory v. Conoco, Inc., 521 So.2d 1220 (La.App. 3rd Cir.1988), writ denied, 526 So.2d 801 (La.1988).
It is important to recall that a work is not considered inherently or intrinsically dangerous if it can be made safe when performed in a proper and workmanlike manner. Smith v. Crown Zellerbach, supra; Guillory v. Conoco, Inc., supra. There is no doubt that the work at issue here could be made safe by being performed in a proper and workmanlike manner. Indeed, the plaintiffs have conceded that the instant work is not inherently or intrinsically dangerous. Thus, it is our view that this concession is fatal to plaintiffs' position because if the work is not inherently dangerous, then the question of express or implicit authorization (or operational control) of an unsafe method of operation is not at issue as pertains to an independent contractor.[5]
*576 It is thus our view that under the traditional Louisiana approach as espoused by Ewell, Louisiana first considers the question from the standpoint of whether the contractor is truly independent. If the principal retains operational control, then the contractor is not an independent one. If the contractor is independent, then the principal is not liable for the contractor's actions unless the work undertaken is inherently or intrinsically dangerous. As part of this exception, if there are precautions that can render the dangerous work more safe, but yet the work is done without these precautions, then the principal is liable if he expressly or implicitly authorizes the fashion of doing the work which rendered it more unsafe. Ewell, supra.
For the foregoing reasons, then, the summary judgment in favor of Tifton is affirmed.

CONCLUSION
In conclusion, for the reasons aforesaid, we affirm the three summary judgments herein in favor of Ohio General Insurance Company, the general liability insurer of Century Ready Mix Corporation (the employer of the truck driver who precipitated the accident); Lincoln Builders of Ruston, Inc., the general contractor on the construction project; and Tifton Aluminum Company, Inc., the owner of the premises, all at appellants' costs.
AFFIRMED.
HALL, C.J., concurs with written reasons.
HALL, Chief Judge, concurring.
I concur to state that I do not fully subscribe to the majority opinion discussion and criticism of the rule enunciated by Grammer v. Patterson Services, Inc., 860 F.2d 639 (5th Cir.1988), and other cases, that a principal may be liable for the acts of an independent contractor "over which it has exercised operational control or which it has expressly or impliedly authorized." This seems to be a fair and correct statement of the law, not inconsistent with cases decided by Louisiana state courts.
However the lack of specific factual allegations by plaintiffs and lack of contravention by plaintiffs of the facts established by the contract, affidavits and depositions supporting Tifton's motion for summary judgment, make it clear that there are no material issues of fact that would support a finding that Tifton exercised operational control over or authorized specific construction activity that caused the accident, or that Tifton was independently negligent. Tifton is, therefore, entitled to summary judgment as a matter of law.
NOTES
[1] Plaintiff has received some compensation for this driver's negligence through its settlement with Commercial Union, with whom Century had a business automobile liability policy.
[2] The court found both that the tying together of a cable that was attached to the trailer was a form of repairing it and amounted to maintenance of the trailer, and that the furnishing of a defective cable causing the accident was a form of strict liability predicated upon the use of a vehicle "owned or rented by the insured."
[3] See also Lucey v. Harris, 490 So.2d 416 (La. App. 5th Cir.1986), writ denied, 496 So.2d 327 (La.1986); Topole v. Eidson, 464 So.2d 406 (La. App. 1st Cir.1985); Tolleson v. State Farm Fire and Casualty Company, 449 So.2d 105 (La.App. 1st Cir.1984), writ denied, 450 So.2d 968 (La. 1984); and Curry v. Iberville Parish Sheriff's Office, 405 So.2d 1387 (La.App. 1st Cir.1981), writ denied, 410 So.2d 1130 (La.1982), writ denied, 410 So.2d 1135 (La.1982), for other cases finding liability for acts independent of the use of an automobile.
[4] The worker's compensation law found at LSA-R.S. 23:1032 and LSA-R.S. 23:1061 read in pertinent part as follows:

§ 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
....
§ 1061. Principal contractors; liability
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole of any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
....
[5] Williams v. Gervais F. Favrot Co., 499 So.2d 623 (La.App. 4th Cir.1986), writ denied, 503 So.2d 19 (La.1987), likewise (just as Grammer v. Patterson Services, Inc., supra, and Hawkins v. Evans Cooperage Co., Inc., supra) stated that there were two exceptions to the rule that a principal is not liable for the work of an independent contractor and cited Ewell v. Petro Processors of Louisiana, Inc., supra, for the position. This is the first instance that we have located in which a Louisiana court spoke of "two exceptions" to the general rule of non-liability on the part of principals for the work of independent contractors. The only other reference we have located is in Herron v. Lincoln Property Company, 525 So.2d 1189 (La.App. 5th Cir.1988), which cites Williams v. Gervais F. Favrot Co. for the proposition. We located no other such references.

We thus believe that the Ewell concept has been misstated, perhaps beginning with federal application in Hawkins v. Evans Cooperage Co., Inc., and believe the question is more accurately approached in Louisiana as we have here suggested.
That is to say that any question of operational control or express/implicit authority is more correctly considered in the context of whether the contractor is in fact an independent one, rather than in the context of an exception to the general rule that principals are not liable for the negligence of their independent contractors. It may be suggested that the distinction we make here is too fine and is one simply of semantics. Indeed, as in the instant case, the result will most likely be the same whether the independent contractor question is considered first per Ewell or secondarily as an exception. However, we do suggest that the fashion in which we have approached the question is not only the more traditional but is simpler.