|! MARVIN, Chief Judge.
This tort action, which presents only an insurance coverage issue at this juncture, arose when plaintiff Robert Yagel, while standing on the shoulder of Interstate 20 in Bossier Parish near his disabled vehicle, was struck in the face by inadequately secured boards being hauled in the bed of a passing pickup truck. The Yagel plaintiffs, which include Yagel’s wife and daughter, appeal a summary judgment dismissing the homeowner’s insurer of the defendant truck driver based on a coverage exclusion in that insurer’s policy for injuries arising from the ownership, maintenance, use, loading or unloading of a motor vehicle.
Plaintiffs attempt to characterize the truck driver’s decision to use the pickup truck, instead of using a larger truck he owned that was more suitable for hauling lumber, as an aspect of negligence that is independent of his negligent use and loading of the pickup, and therefore not within the policy exclusion.
Agreeing with the trial court that the use or loading of the vehicle is an essential element of every aspect or theory of plaintiffs’ claim against the truck driver, and assigning additional reasons which support the judgment dismissing the homeowner’s insurer, we affirm. See Picou v. Ferrara, 412 So.2d 1297 (La.1982); Massey v. Century Ready Mix Corp., 552 So.2d 565 (La.App. 2d Cir.1989), writ denied; and Mahlum v. Baker, 25,876 (La.App. 2d Cir. 6/24/94), 639 So.2d 820, J. Brown dissenting.
JaFACTS
The truck driver, Stanley Sanders, operated a trucking business from his home. He bought the lumber, which measured about 14-18 feet in length, to repair some broken boards in the bed of his tractor-trailer rig. Instead of using the tractor-trailer rig to haul the lumber, as he had done in the past, Sanders used his pickup truck, with a standard eight-foot bed, incorrectly assuming that he could safely haul the boards in it.
Sanders loaded the lumber in the pickup by placing one end of the load at the rear of the truck bed, just inside the tailgate, and the other end over the cab of the truck. Sanders tied the boards to a “headache rack” at the front of the truck bed, just behind the cab, but the boards came loose as Sanders increased his speed on the highway. Yagel,-who was standing on the shoulder of the highway preparing to tow his stalled vehicle with another vehicle that was parked ahead of it on the shoulder, was struck by one or more boards, and not by the truck itself.
Yagel’s daughter, Patricia Battlefield, was sitting in the disabled vehicle and witnessed the accident. She and Yagel’s wife have asserted claims for their mental anguish and loss of consortium, respectively.
Among the defendants named in the suit are Sanders, his automobile liability insurer, State Farm, and his homeowner’s insurer, Louisiana Farm Bureau Mutual Insurance Company. The Farm Bureau policy at issue here excludes coverage for injury or damage arising from the “ownership, maintenance, use, loading or unloading” of a motor vehicle.
| ¡/THEORIES OF LIABILITY
In opposition to Farm Bureau’s motion for summary judgment, plaintiffs argued that their original and amended petitions asserted *172 two separate theories of liability against Sanders, one involving his negligent use or loading of the pickup, and the other involving his negligent decision to use the pickup truck, which he knew or should have known was inadequate for safely hauling lumber that was several feet longer than the bed of the pickup, instead of using the larger tractor-trailer rig. Emphasizing that Sanders made the decision to use the pickup earlier in the day, before he left home to buy the lumber, plaintiffs argued that this theory of liability was independent of Sanders’ actual use or loading of the truck and should not be deemed to fall within Farm Bureau’s exclusion, even if other aspects of Sanders’ conduct were found to be excluded from coverage.
Among the cases cited by plaintiffs in opposition to Farm Bureau’s motion were Kessler v. AMICA Mutual Ins. Co., 573 So.2d 476 (La.1991) and Tillman v. Canal Insurance Co., 305 So.2d 602 (La.App. 1st Cir.1974), writ denied. In both of these cases, tortious conduct in which a motor vehicle was factually involved was nevertheless found to be independent of the vehicle’s use for purposes of deciding the legal issue of insurance coverage/exclusion for losses arising from the use of a motor vehicle.
Uninsured motorist coverage was not available in Kessler, where the “phantom” vehicle driver, who ran a stop sign, shot the favored driver in the head after the favored driver blew his horn and took evasive action to successfully avoid a collision.
Uln Tillman, a load of gravel that was spilled from a truck belonging to the lessee of a nearby gravel pit, onto a state highway after midnight, apparently did not cause any immediate damage or injury, but was left in the road for several hours, eventually causing a head-on collision about 3:30 a.m. The truck driver’s negligence in leaving the spilled gravel on the highway for perhaps several hours without warning other motorists of its presence was found to be covered by his employer’s comprehensive general liability insurance, notwithstanding an “automobile use” exclusion in that policy, rather than by the employer’s automobile liability policy.
In oral reasons for judgment, the trial court found Kessler and Tillman distinguishable:
The cases cited by counsel in opposition [to summary judgment] all dealt with factors other than things that occurred during the course and scope of [using] the vehicle. [W]hen we get into intentional acts ... [such as Kessler’s ] shooting of a firearm ... the act itself is so grossly out of proportion to the use of the automobile [that] liability will be imposed ... under some theory other than the use of the automobile theory.
... [In Tillman ], the gravel dumped on the road was there for an appreciable period of time. Had that same gravel truck been going down the road and the load became free and dumped on the road and the car right behind it smashed into it, in all probability, the opinion of the court would have differed. The theory of liability in that case was the fact that it was there and left to remain there....
I believe that the only theory of recovery in this ease has to do with the use of the automobile. [T]he load was insecure ... Counsel admits that fact. There’s nothing to show that the act itself was anything other than the improper use of a vehicle. He improperly loaded it. It’s an integral part [of] the operation of the vehicle; the hauling of something in a pickup truck. That’s why they put beds on the back of them. That’s part of the use of that vehicle. I believe that the appropriate interpretation of the ... policy language excludes any liability under the homeowner’s policy because this arose out of the use of the [vehicle]_ (Our brackets.)
I-DISCUSSION
At oral argument in this court, plaintiffs asserted as the primary supporting authority for their “independent negligence” theory, the case of Smith v. USAA Cas. Ins. Co., 532 So.2d 1171 (La.App. 4th Cir.1988). There, the parents of three children who were injured when the two recreational four-wheel vehicles they were riding collided, brought a claim for negligent supervision of the children against the owners of the four-wheelers, *173 Mr. and Mrs. Woodside, and various insurers, including the Woodsides’ homeowner’s insurer, whose policy excluded coverage for claims arising out of the operation or use of a motor vehicle. The trial court’s refusal to dismiss the homeowner’s insurer from the action on the basis of this exclusion was upheld on appeal, for these reasons:
... [A] policy exclusion for the operation of a vehicle ... is not applicable where the asserted negligence or cause-in-faet of the injuries is independent of the vehicle’s operation.... [T]he negligence asserted against the Woodsides is their failure to supervise the minors who were operating the vehicles, not the negligent operation of the vehicles.
532 So.2d at 1174.
Plaintiffs’ reliance on Smith cannot withstand scrutiny in the face of this court’s decision in Mahlum v. Baker, cited supra, which was rendered a few months after the trial court granted Farm Bureau’s motion for summary judgment. Mahlum involved a collision between a motorized “trail bike” being ridden by the plaintiffs’ ten-year-old son, who was killed in the accident, and a car driven by defendant Baker. Baker reconvened for her damages against the Mahlums and their mobile home insurer, alleging the parents were vicarious liability for their son’s negligence and were | independently negligent for failing to properly supervise him while he rode the trail bike.
After discussing the ease law on both sides of the issue, including Smith and various supreme and appellate court decisions for and against the approach taken there, some of which have been cited by the litigants here, we affirmed summary judgment dismissing the homeowner’s insurer based on its policy exclusion for losses arising from the use or operation of a motor vehicle:
The Mahlums’ alleged [independent] negligence is firmly grounded in supervision of [their son’s] “use” or “operation” of the trail bike, and use of the trail bike is essential to the theory supporting their, alleged liability from improper supervision.... [W]e specifically decline to follow Smith ...
No. 25,876, at pp. 9, 12, 639 So.2d at 825, 826-827. Our emphasis and brackets.
Judge Brown dissented, concluding from the record that the independent theory of liability “does not necessarily fall within the automobile use exclusion.” Dissent, p. 2, 639 So.2d at 828.
No writ application was filed in Mahlum, which is now authoritative in this circuit. See also and compare Oaks v. Dupuy, 26,729 (La.App. 2d Cir. 4/5/95), 653 So.2d 165, in which we have determined that the “automobile use” exclusion in a general liability policy insuring the father of an intoxicated driver and the father’s incorporated business, excludes coverage for a claim that the father negligently entrusted the company vehicle to his son, who apparently had a history of alcohol-related accidents.
|7The result in Mahlum, and in the trial court here, is in accord with the earlier cases of Picou v. Ferrara (La.1982) and Massey v. Century Ready Mix Corp. (La.App. 2d Cir.1989), both cited supra. The plaintiff-motorcyclist's assertion in Picou that his injuries were caused not only by the negligence of the defendant driver who was on an errand for his employer, but also by the employer’s independent negligence in choosing that employee to make the delivery, did not bring the claim within the employer’s general liability coverage, which contained an automobile use exclusion. 412 So.2d at 1300.
Similarly, in Massey, a third-party tort action arising from a work injury to an iron worker at a construction site, the automobile use exclusion in the general liability insurance policy covering Century Ready Mix Corp., the employer of the defendant truck driver who backed his vehicle into a structure on which the plaintiff was working, precluded coverage, both for the driver’s negligence and for the alleged “independent negligence of another Century driver who had previously made a delivery to the soon-to-be accident site and who failed to warn the [later] driver ... of the dangerous situation or assist him by acting as a flagman.” 552 So.2d at 567.
*174 CONCLUSION
The use or loading of Sanders’ pickup to haul the lumber that struck and injured Ya-gel is an essential element of every theory of recovery plaintiffs assert against Sanders, including his alleged negligence in deciding to use the pickup, which he allegedly knew or should have known was not ^suitable for safely loading and hauling the lumber which ultimately injured Yagel.
The factual discrepancy between Sanders’ deposition testimony, on the one hand, that the boards which struck Yagel were still at least partially inside the bed of the pickup at all times, and the statements of Yagel’s daughter in her affidavit, on the other, that “the lumber fanned out to the right and extended ... over the right side” of the pickup when the truck was about 500 feet from the accident scene but “appeared to be airborne” when it struck her father, obviously within seconds thereafter, is not material to the coverage issue and does not preclude summary judgment. See CCP Art. 966. Compare Tillman, supra, the spilled gravel case, with Duvigneaud v. Government Emp. Ins. Co., 363 So.2d 1292 (La.App. 4th Cir.1978), writ denied (injuries to plaintiff who lost control of his motorbike when a dog jumped out of a parked car’s open window and ran into the street a “few moments” after the car was parked along the lakefront in New Orleans, arose out of the driver’s use of the car and were within the scope of plaintiff’s uninsured motorist coverage).
DECREE
At plaintiffs’ cost, the judgment is AFFIRMED.