IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-30303

_____


RELIANCE INSURANCE COMPANY,

      Plaintiff Third Party Defendant - Appellee - Appellant,

versus

THE LOUISIANA LAND AND EXPLORATION COMPANY,

      Defendant Third Party Plaintiff - Cross Claimant -
               Appellant - Appellee,

CBS ENGINEERING, INC.,

      Defendant - Cross Defendant - Appellee,

GULF ISLAND FABRICATION,

      Third Party Defendant - Third Party Plaintiff -
               Appellant - Appellee,

LLOYD'S LONDON,

      Third Party Defendant - Appellee,

THE UNITED NATIONAL INSURANCE COMPANY,

      Third Party Defendant - Appellee.


_____


LOUISIANA LAND AND EXPLORATION COMPANY,

      Plaintiff - Appellant,

versus

GULF ISLAND FABRICATION, INC.,

      Defendant - Appellee,

LLOYD'S UNDERWRITERS AT LONDON,

      Defendant - Appellee.


_____

Appeals from the United States District Court
For the Eastern District of Louisiana

_____

April 4, 1997


Before HIGGINBOTHAM, SMITH, and BARKSDALE, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In the wake of an accident during the load-out of part of an offshore oil platform, the parties in this case find themselves litigating the question of who should bear the burden of the loss. We conclude that the district court resolved the cases properly, which means that none of the efforts to re-allocate expenses can survive summary judgment.

I.

Louisiana Land & Exploration Co. entered into two contracts in connection with its efforts to drill for oil off of the gulf coast. In February of 1991, LL&E contracted with Gulf Island Fabrication for the construction, load-out, and tie-down of an offshore facility. Gulf Island was to construct the "jacket" — the legs of the offshore platform — at its yard in Houma, Louisiana. LL&E would hold title to the jacket at all times. The contract specified that the risk of loss fell upon Gulf Island "until the Marine Surveyor has certified the acceptability of the Stowage of the Cargo upon the barge(s) supplied by the Installation Contractor." The contract required both that Gulf Island defend and indemnify LL&E against any claims arising out of damage caused by Gulf Island or any of its agents and also that Gulf Island maintain various insurance policies while performing work for LL&E. Gulf Island obtained a general liability insurance policy from Lloyd's. Gulf Island also maintained an insurance policy for builders' risk with Reliance Insurance Company, the original plaintiff in this case.

2

LL&E's second contract was with CBS Engineering, which agreed to provide "structural design, facilities design and project management" services in connection with Gulf Island's fabrication of the jacket. Essentially, LL&E hired CBS to oversee Gulf Island's progress on the project and to provide professional engineering services. The contract with CBS contained a comparative fault provision for damage to the property of either party. It also required CBS to defend and indemnify LL&E in case CBS's negligence caused any damage to or claims against LL&E. When the parties executed the contract, they crossed out and initialed a provision that would have required CBS to indemnify LL&E for CBS's negligence in performing professional services. In compliance with the contract, CBS obtained general liability insurance from United National Insurance Company ("UNIC") and named LL&E as an additional insured. The UNIC policy, however, did not insure against professional negligence.

The parties planned to load the jacket onto a barge with a width of 100 feet in order to transport it for installation in the gulf. But the widest barge available was only 72 feet wide. Gulf Island proposed a plan to modify the barge to accommodate the jacket. Gulf Island's strategy was to build load-out beams across the barge so that the legs of the jacket would have someplace to rest. This would have been relatively safe, but it was also very expensive, and LL&E and CBS rejected the plan. CBS developed an alternative plan, which LL&E and Gulf Island agreed to implement. This plan involved reinforcing interior components of the jacket so

3

that they could bear the weight of the jacket without help from the jacket's legs. During load-out, however, the jacket collapsed and rolled off of the barge. Both the jacket and the barge were damaged.

In an August 26, 1991, letter from its vice president of operations, Gulf Island acknowledged its responsibility under the risk-of-loss provision to repair the jacket. Gulf Island performed these repairs and eventually loaded out the jacket successfully. Reliance fulfilled its obligations under the builders' risk policy and reimbursed Gulf Island in the amount of $275,425.22.

Then Reliance, as Gulf Island's subrogee, sued LL&E and CBS to recover the costs of the jacket repairs, which Reliance claims were due to the fault of LL&E and CBS. LL&E filed a cross-claim against CBS and third-party claims against UNIC, Gulf Island, and Lloyd's.[1] Gulf Island eventually filed its own third-party claim against Reliance.

On September 30, 1993, the district court dismissed Reliance's claim against CBS on a summary judgment motion. On October 4, it dismissed Reliance's claim against LL&E. Both dismissals were predicated on the insufficiency of evidence presented by Reliance's expert, Dennis Sherman. Mr. Sherman offered muddled deposition testimony, and the court had denied Reliance's request to supplement his report in order to clarify the testimony. Two days later, the court dismissed LL&E's claim against CBS. The court

---

[1] LL&E also filed a separate suit against Gulf Island and Lloyd's. The district court consolidated that suit with the litigation initiated by Reliance.

4

further held that the indemnity provision in the contract between LL&E and Gulf Island would not be triggered unless Gulf Island was at fault in causing damage to the jacket.

After Reliance's claims were dismissed, Gulf Island filed its third-party demand against Reliance in order to recover the costs of defending against LL&E and to claim a right to reimbursement for any damages Gulf Island might suffer in LL&E's third-party claim against Gulf Island. In November of 1995, LL&E settled its claim against Gulf Island for LL&E's defense costs and attorneys' fees throughout this litigation. The district court dismissed Gulf Island's third-party complaint on February 14, 1996.

Three parties have appealed. Reliance appeals the summary judgments granted in favor of LL&E and CBS. LL&E appeals the summary judgments granted in favor of CBS, UNIC, Gulf Island, and Lloyd's. And Gulf Island appeals the summary judgment granted in favor of Reliance. We take up each of these disputes in turn.

## II.

### A.

Reliance filed its expert report on time, and Mr. Sherman gave his deposition during the 30 days between the deadline for Reliance's expert report and the deadline for LL&E's and CBS's expert reports. Mr. Sherman's report did not address CBS's load-out plan. Instead, it analyzed the quality of the original design of the jacket. At the deposition, Mr. Sherman seemed to deny that his analysis contributed to an understanding of what caused the jacket to fail during the load-out. When asked whether he was

5

"asked to form an opinion as to the cause of this casualty," he said: "No.  Not really.  I was not looking into how or why it was caused."  He admitted that he "never went to the point of failure analysis to determine if [the jacket] is under designed enough to be failing, or to expect it to fail."  Instead, he limited himself to asking whether the jacket was designed so that it could handle the load-out plan as designed by CBS and as executed by Gulf Island.  As LL&E and CBS prepared for trial, they operated on the theory that Mr. Sherman had no opinion as to whether deficiencies in CBS's work contributed to the load-out accident.[2]

---

[2] The attorney representing CBS and UNIC tried to pin Mr. Sherman down on this point.

Mr. Sherman:   [T]he report states where members are under designed.  It doesn't state whether the structure would fail at being under designed to that point. In other words, a member may not be designed per codes, but still may not fail.  It's hard to say whether it would fail or not. . . .

Mr. Redwine:   I gather from that answer that you have not formed an opinion as to whether your perceived under design had anything to do with this casualty.

. . .

A:   . . . I can't state that the under design was the definite reason for the casualty.

Q:   Can you state whether the under design was any part of the casualty?

A:   No, I can't state that with certitude, no.

Q:   I may seem to be repeating myself, and asking the same question a different way.  I want to be sure I understand exactly what is going on here.  I want to be sure that you have a chance to answer completely.  . . .  As I understand it from your answers, and correct me immediately if at anytime I am wrong, you were asked only to determine whether the design of this structure was proper for the load-out procedure that was proposed by Gulf Island Fabrication, or that was proposed by —

A:   Yes, I was asked if the proposed load plan as of the CBS drawings and the load-out plan actually used by Gulf Island, which were not identical, whether they were — whether they were — the

6

Based on the report and the deposition, LL&E and CBS decided that it did not need to counter Mr. Sherman's testimony with an engineering expert of its own. Ten days after the defendants' deadline for submitting expert reports had passed, Reliance sought the court's permission to supplement Mr. Sherman's report. Mr. Sherman's supplemental report would "specifically address his opinion regarding the cause of the failure of the load out method provided by defendants in plain English, as opposed to being contained in mathematical calculations as it was in the original report." Reliance assured the court that Mr. Sherman would be available for further depositions and that supplementing the report would not delay trial.

LL&E and CBS vigorously opposed Reliance's motion to supplement the report. They pointed out that the discovery cut-off date was only three weeks away and that the supplement might cause

---

structure itself was adequately designed for either of those conditions.

Q: And that was the limit of what you were asked to do.

A: Right.

Q: You were not asked, I gather, to form any opinion as to the propriety of either the CBS load-out plan or the load-out procedure that Gulf Island Fabrication actually used.

A: No. I was only asked in regard to the design. Not to the actual loading out.

. . .

Q: I think you previously told me all you were asked to do and all you have done is to analyze the structural integrity of that platform to see if it was designed properly for the proposed load-out on to a seventy-two foot barge.

A: Yes.

Q: Is that the limit of what you did?

A: Yes. . . .

them to need an engineering expert of their own. With pre-trial conference only two months away, delays were likely. LL&E and CBS also argued that the court should not allow a modification of the discovery schedule because Reliance failed to request supplementation at the earliest possible date.

Whatever the import of Mr. Sherman's testimony, the district court did not abuse its discretion when it denied Reliance's request to supplement its expert report. Fed. R. Civ. P. 16(b) allows a scheduling modification only for good cause. We consider four factors in determining whether the district court abused its discretion in holding that Reliance did not show good cause: "(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir. 1990). As in Geiserman, the first and third of these factors weigh against deviation from the schedule. Reliance asked for an opportunity to avoid the deadline for its expert report merely because the deposition of its expert witness did not go well. It has offered no justification for its delay in attempting to cure Mr. Sherman's deposition and report. Furthermore, the court concluded that "[t]o allow plaintiff to add more material now and create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions, and thus disrupt the trial date in this case."

8

District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case. See Turnage v. General Electric Co., 953 F.2d 206, 208-09 (5th Cir. 1992). Here two of the four Geiserman factors counsel against allowing a deviation from the trial court's scheduling order. We are not persuaded that the court abused its discretion under Rule 16(b).

B.

Reliance's claim against CBS is grounded in professional negligence. Reliance concedes that Mr. Sherman did not speak to the question of whether CBS's proposed modification breached the standard of care among professional engineers. It contends, however, that expert testimony concerning a professional's duty of care and breach of that duty is not necessary "[w]hen the matter in question is one that can typically be understood without assistance from an expert." M.J. Womack, Inc. v. State House of Representatives, 509 So. 2d 62, 66 (La. Ct. App.), writs denied, 513 So. 2d 1208; 513 So. 2d 1211 (La. 1987). In essence, Reliance advocates a version of res ipsa loquitur in the malpractice context: CBS modified the jacket and the jacket failed at a load point modified by CBS. This is enough circumstantial evidence, according to Reliance, for a jury to find that CBS was negligent.

Even if we assume — contrary to the deposition testimony — that Mr. Sherman's expert report supports the claim that CBS's modifications caused the jacket to fail, Reliance has submitted no evidence from which a jury could conclude that CBS acted

9

negligently. Mr. Sherman stated that Gulf Island did not follow CBS's plan exactly when it attempted to load the jacket onto the barge. These facts are equally consistent with the speculation that Gulf Island acted negligently when it conducted the load-out or that the jacket's materials were substandard. Mr. Sherman's report included 90 pages of technical calculations. An unassisted court cannot be expected to evaluate the reasonableness of a professional judgment that involves so much sophistication. Because Reliance has admitted that it must rely on a "common sense standard of care," Womack, 509 So. 2d at 66, it cannot prevail on its engineering malpractice claim against CBS.

C.

Reliance's claim against LL&E is grounded both in tort and in contract. The district court correctly held that neither theory has validity.

According to Reliance, LL&E is vicariously liable for the negligence of CBS under Louisiana law either because the work was intrinsically dangerous or because it exercised operational control over CBS, its independent contractor. To support this position, Reliance cites Massey v. Century Ready Mix Corp., 552 So. 2d 565, 573-76 (La. Ct. App. 1989), writ denied, 556 So. 2d 41 (La. 1990). Under Massey, a principal is vicariously liable for the negligence of an independent contractor if the work is inherently dangerous and the principal authorizes the contractor to undertake the work without precautions that would render the work safer. Cf. Grammar v. Patterson Serv., Inc., 860 F.2d 639, 641 (5th Cir. 1988), cert.

10

denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989) (asserting that there are two separate exceptions under Louisiana law to the general rule that principals are not vicariously liable for the negligence of independent contractors).

Because we affirm the grant of summary judgment in favor of CBS, we need not address Reliance's arguments. Without negligence on the part of CBS, Reliance's tort theory against LL&E collapses.

Reliance's contract theory against LL&E fares no better. The contract between LL&E and Gulf Island called for a 100-foot-wide barge. Reliance argues that LL&E breached this provision when it failed to supply one. Gulf Island did not object to the smaller barge. The district court held that Gulf Island's consent meant that there was no breach, and it further held that Reliance failed to raise a question as to whether the smaller barge caused the damage to the jacket. On appeal, Reliance does not mention anything like the pre-existing duty rule. Instead, it asserts simply that consensual modification requires more than indefinite, ambiguous statements. According to Reliance's own statement of facts, however, Gulf Island's consent was not indefinite or ambiguous. In arguing that it "should not be penalized for such detrimental reliance," Reliance hints at the argument it really has in mind: Gulf Island's uninformed consent shouldn't count.

As Gulf Island's subrogee, Reliance cannot assert a contract claim that Gulf Island could not assert. Guillot v. Hix, 838 S.W.2d 230, 232 (Tex. 1992) ("Because a subrogation action is derivative, the defendant . . . may ordinarily assert any defense

11

he would have had in a suit by the subrogor.").[3]  The summary judgment evidence indicates that Gulf Island intended to modify the contract when it consented to the use of the 72-foot-wide barge. Under Texas law, its conduct effected a modification.  See Hondo Oil & Gas Co. v. Texas Crude Operator, Inc., 970 F.2d 1433, 1437-38 (5th Cir. 1992).[4]  Reliance has no contract claim against LL&E because Gulf Island would have no contract claim against LL&E.  The district court did not err in granting summary judgment.

### III.

LL&E and Gulf Island have settled their dispute over their respective duties to pay for the cost of LL&E's defense.  Because we affirm summary judgment in favor of LL&E and against Reliance, the remaining issues among LL&E, Gulf Island, and Lloyd's are moot.

The same is true of LL&E's suit against CBS and UNIC.  At oral argument, counsel for LL&E stated that it was appealing the summary judgment granted in favor of CBS and UNIC only in case Reliance's suit against LL&E should be revived.  In light of our holding above, we have no occasion to review the district court's summary judgment.

---

[3] Gulf Island's contract with LL&E included a choice-of-law clause that stated that Texas law would govern the contract.  The rule would be the same under Louisiana law.  See Stevens v. Mitchell, 102 So. 2d 237, 242 (La. 1958) ("[A]ll defenses that can be urged against the insured are likewise available against [the insurer].").

[4] Again, the same is true under Louisiana law.  See, e.g., Bank of Louisiana v. Campbell, 329 So. 2d 235, 237 (La. Ct. App.) ("[A]cquiescence in changes in the delivery schedule constitutes a tacit acceptance of new terms."), writ denied, 332 So. 2d 866 (La. 1976).

IV.

Gulf Island sued Reliance in order to recoup damages owed to LL&E and the costs of defending the suit brought by LL&E. In keeping with our holdings above, the only issue remaining is whether Reliance must reimburse Gulf Island for the costs of its settlement with LL&E and the costs of defending LL&E's suit.

In part, Gulf Island argues that Reliance should not have asserted claims against LL&E that Gulf Island itself could not have asserted against LL&E. Because Gulf Island consented to the 72-foot-wide barge and accepted responsibility for the accident, it asserts that Reliance was not entitled to sue LL&E as Gulf Island's subrogee. See State v. USF&G, 577 So. 2d 1037 (La. Ct. App.), writ denied, 581 So. 2d 684 (La. 1991); Travelers Ins. Co. v. Impastato, 607 So. 2d 722 (La. Ct. App. 1992) (both holding that a subrogee may not maintain a suit when the subrogor has executed a contract waiving its rights). But Gulf Island never waived its right to seek reimbursement for the jacket damage in a tort suit by alleging that LL&E acted negligently. In any event, this line of argument supports the view that Reliance should not win its suit against LL&E; it does not support the view that Reliance's filing the suit was a violation of its duties to Gulf Island for which Gulf Island should be awarded damages.

Gulf Island also argues that Reliance failed to exercise good faith because its suit caused financial harm to Gulf Island. But the two cases it cites are not on point. Maryland Cas. Co. v. Dixie Ins. Co., 622 So. 2d 698 (La. Ct. App.), writ denied, 629 So.

13

2d 1138 (La. 1993), involved nothing more than an insurer's bad faith in defending a policyholder. Its rhetoric about the insurer as "the champion of its insured's interests," id. at 701, does not establish the rule that a subrogated insurer is liable whenever it causes harm to its insured. And Smith v. Manville Forest Products Corp., 521 So. 2d 772 (La. Ct. App.), writ denied, 522 So. 2d 570 (La. 1988), dealt with a partially subrogated insurer that recovered more from the defendant than it paid to its insured. This case, by contrast, does not present an insurer securing a windfall. Nor has Gulf Island presented us with Louisiana law that shows that Reliance breached its generalized duty of good faith and fair dealing under La. Rev. Stat. Ann. § 22:1220 (West 1995).[5]

Gulf Island has failed to describe any conduct on the part of Reliance that was unfair to Gulf Island. Gulf Island granted Reliance subrogation rights, and Reliance was entitled to sue LL&E on theories of negligence and breach of contract. Reliance caused LL&E's suit against Gulf Island, but Gulf Island has not cited any cases to support its claim that Reliance also breached some duty by suing a defendant who in turn sued its insured. It is not our place to inject into Louisiana law the rule that an insurer is liable to an insured when the insurer asserts conventional subrogation rights and inadvertently causes a third party to sue

---

[5] Gulf Island directs our attention to Theriot v. Midland Risk Ins. Co., 683 So. 2d 681, 687 (La. 1996), for the proposition that § 1220A creates a generalized duty of good faith not limited to the five specific breaches listed in § 1220B. The Louisiana Supreme Court, however, has recently withdrawn Theriot from publication. We do not reach the question of the precise scope of an insurer's duties under § 1220A.

14

the insured.  Thus, the district court did not err in granting summary judgment for Reliance and against Gulf Island.

## V.

The district court was correct to hold that none of the suits in this litigation involves a genuine issue of material fact. Summary judgment in favor of LL&E and CBS and against Reliance is AFFIRMED.  Summary judgment in favor of CBS and UNIC and against LL&E is AFFIRMED.  Summary judgment in favor of Gulf Island and Lloyd's and against LL&E is AFFIRMED.  And summary judgment in favor of Reliance and against Gulf Island is AFFIRMED.