**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-30512
(Summary Calendar)
_____

RICKY BROWN; ET AL,

                                                        Plaintiffs

versus

OLIN CHEMICAL CORP, also known as Olin Chemical Co; ET AL,

                                                        Defendants

HORSESHOE ENTERTAINMENT,

                                        Intervenor Plaintiff-Appellant

versus

OLIN CORP,

                            Defendant-Intervenor Defendant-Appellee

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

November 6, 2000

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:

    In this Louisiana tort case, in federal court on the basis of

diversity of citizenship, Intervenor Plaintiff-Appellant Horseshoe

Entertainment ("Horseshoe") appeals the district court's grant of

Defendant-Appellee Olin Corp's ("Olin") motion for summary

judgment. Horseshoe alleges that completion of the construction of its new riverboat casino vessel was delayed when dangerous chemicals were emitted from Olin's nearby plant, drifting onto the still-unfinished boat and causing many of the workers to fall ill. Horseshoe argues that summary judgment should not have been granted because Olin was responsible for the emissions and thus should be liable for the damages incurred by Horseshoe because of the construction delay.

## I.

### Facts and Proceedings

Horseshoe operates a gaming business in Bossier City, Louisiana, which involves the use of a riverboat casino. To further those activities, it procured an unfinished vessel, THE KING OF THE RED ("the riverboat"), which was scheduled to replace Horseshoe's old casino after the new vessel was properly fitted and furnished. As a location for performing the work required for the final fitting and furnishing of the riverboat, Horseshoe subleased property fronting the Red River and moved the boat to that site. A number of contractors and subcontractors were hired to perform the necessary work.

In the summer of 1997, during the course of the finishing work on the riverboat, quite a few of the construction workers fell ill. This forced Horseshoe to shut down the finishing project until the workers could recover and monitoring and safety systems could be put in place. The workers' illnesses were apparently caused by

2

exposure to chemicals, alleged by Horseshoe and the workers to be sulphur dioxide and sulfuric acid. Their exposures to chemicals purportedly occurred on several occasions in 1997. Workers' affidavits filed by Horseshoe aver that the chemical exposure on these instances initially led to their gagging and falling to their knees.

Olin's plant is located roughly 500 yards from the site of the finishing work on the riverboat. This site is also near and occasionally downwind from other industrial sites, including the Red River Terminal plant. Olin has a permit to manufacture commercial grade sulfuric acid at the subject plant and to emit sulfur dioxide and other chemicals in the course of that process. Olin admits that it has done so but only within the regulatory limits set by the Louisiana Department of Environmental Quality ("LDEQ"). None dispute that Olin, at all times, "complied with all of its air quality regulatory limits."

Horseshoe and the other plaintiffs allege that emissions from Olin's plant were the cause of their chemical exposure. Specifically, they offer a number of affidavits asserting that yellow clouds were seen coming toward the riverboat from Olin's nearby chemical plant, soon after which they noticed a strong sulfur odor, and a number of workers fell ill.

From time to time, chemical plants such as Olin's experience events called "upsets," typically caused by interruptions in the plant's power supply, which cause clouds of chemicals to be

3

released into the air but not in quantities that exceed regulated limits. Olin contends that no "upset" occurred during the period in question, specifically not on August 18, 1997, as Horseshoe alleges.

After Plaintiff Ricky Brown and other workers filed suit in state court against Olin, seeking damages for alleged exposure to chemicals released by its plant, Olin removed the case to federal court. Similar suits were filed by other workers, and their cases were consolidated with those of Brown and others in federal court. Horseshoe moved to intervene in the proceedings as a plaintiff, and the district court granted that motion. Horseshoe seeks compensatory damages for (1) the increase in the cost of the construction of the riverboat caused by the delays that resulted from the chemical exposure and (2) lost profits for the time that placing the riverboat into service as a casino was delayed. Prior to trial, Olin filed a motion for summary judgement which the district court granted. Horseshoe filed a motion for new trial which the district court denied. Horseshoe then appealed the grant of summary judgment.

## II.

### *Analysis*

A. Standard of Review

"We review a district court's grant of summary judgment de novo. In doing so, we employ the same criteria as the district court, and construe all facts and inferences in the light most

4

favorable to the non-moving party."[1]

B.    Alleged Liability of Olin

1.    Tort Liability Standard

Olin concedes that its plant emits sulfur dioxide and sulfuric acid but insists that it does so only within accepted regulatory limits.  The evidence does not show that Olin exceeded acceptable emissions limits at any of the times at issue, nor was any evidence adduced showing that Olin exercised anything less than reasonable care in the operation of its plant.  Horseshoe argues, however, that such proof is not necessary, contending that the applicable standard is strict liability pursuant to article 669 of the Louisiana Civil Code.[2]

Horseshoe asserts that its claim under Article 669 does not require a showing of negligence, insisting that this article provides for liability without fault.  We disagree.  In 1996, the Louisiana Legislature amended Article 667 to require a showing of negligence in any claim for damages other than those caused by "pile driving" or "blasting with explosives."[3]  Prior to this amendment, strict liability applied to all ultra-hazardous activities, which specifically included such endeavors as "pile driving, storage of toxic gas, blasting with explosives, and crop

---

[1] Doddy v. Oxy U.S.A., Inc., 101 F.3d 448, 460 (1996) (citing New York Life Ins. Co. v. The Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir.1996)).

[2] La. Civ. Code Ann. art. 669 (West 2000).

[3] See La. Civ. Code Ann. art. 667 (West 2000).

dusting with airplanes."[4] We are convinced that the 1996 amendment to Article 667 applies to Articles 668 and 669 as well, so that stating a claim under one or more of these articles now requires a showing of negligence. The Louisiana Supreme Court has consistently treated these three code articles (which together govern Louisiana's nuisance law) as a cohesive unit, uniformly interpreting them in pari materia.[5] As such, the 1996 amendment engrafted a standard of negligence on all three code articles and thus on nuisance law in Louisiana, leaving exceptions only for "pile driving" and "blasting with explosives" (neither of which were being undertaken by Olin's plant at the relevant times).[6]

2. *Res Ipsa Loquitur*

Assuming arguendo that negligence is the proper standard of liability, Horseshoe argues in the alternative that the doctrine of res ipsa loquitur ("res ipsa") applies here, relieving Horseshoe of the need to prove Olin's negligence. Again, we disagree. "The

---

[4] Bartlett v. Browning-Ferris Industries, Chemical Services, Inc., 683 So.2d 1319, 1321 (La. App. 3 Cir. 1996).

[5] See O'Neal v. Southern Carbon Co., 43 So.2d 230 (La. 1949) (treating Articles 667-669 as a unit in deciding a case involving emissions from a manufacturing facility); Dean v. Hercules, Inc., 328 So.2d 69 (La. 1976); McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La. 1984); Rodrigue v. Copeland, 475 So.2d 1071 (La. 1985); Inabnet v. Exxon Corporation, 642 So.2d 1243 (La. 1994); Ford v. Murphy Oil U.S.A., Inc., 703 So.2d 542 (La. 1997) (declining to certify a class action against several petrochemical facilities and oil refineries for alleged emissions of airborne chemicals and assuming that the nuisance action arose under Articles 667-669 as a unit).

[6] See La. Civ. Code Ann. art. 667 (West 2000).

6

principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses."[7]  The defendant's negligence under res ipsa

> may be proved by circumstantial evidence alone when that evidence establishes, more probably than not, that the injury was of a kind which ordinarily does not occur in the absence of negligence, that the conduct of the plaintiff or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury, and that the indicated negligence was within the scope of the defendant's duty to the plaintiff.[8]

Of these three requirements, Horseshoe has failed to establish the first two.  It has demonstrated only that Olin had a duty to show it had used reasonable care in operating its plant sufficient to keep from harming its neighbors.

Horseshoe has not shown that the damage caused here is of "the type which does not ordinarily occur in the absence of negligence."[9]  Res ipsa is employed (typically in the medical malpractice context) when the cause of the harm is obvious, such as "fracturing a leg during an examination; amputating the wrong arm; carelessly dropping a knife, scalpel, or acid on a patient; or

---

[7] Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 660 (La. 1990).

[8] Id. at 665.

[9] Id. at 666.

leaving a sponge in a patient's body."[10] The instant facts, specifically Horseshoe's workers' falling ill on the job apparently because of exposure to airborne chemicals, clearly do not fit this category. Horseshoe has not shown that the workers fell ill as a result of chemical exposure or that they could not have fallen ill from chemical exposure when the nearby chemical plants (including Olin's) are being operated with the exercise of reasonable care. Although these may be reasonable assumptions, we cannot make them in the absence of corroborating scientific evidence. When, as here, the source of the harm is not apparent on the face of the facts alleged, the plaintiff must put forth expert testimony to show that the harm could only have been caused by the negligence of the defendant.[11] Horseshoe has offered no such evidence.

Horseshoe has also failed to negate the possibility that the chemical exposure to workers on the riverboat's construction site could have been caused by another source.[12] There are several other chemical plants in the vicinity of that site, and, even assuming that the illnesses of the workers were caused by chemical exposure, any one of these plants could conceivably have been the source of their exposure. For instance, the LDEQ found that the nearby Red

---

[10] Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 719 (La. 1986) (citations omitted).

[11] See White v. McCool, 395 So.2d 774, 777 (La. 1981); see also Reliance Insurance Co. v. Louisiana Land and Exploration Co., 110 F.3d 253, 258 (5th Cir. 1997).

[12] See Cangelosi, 564 So.2d at 666.

8

River Terminal emitted hydrogen sulfide, in violation of its LDEQ permit, between June 6, 1997 and August 18, 1997 — the approximate period during which Horseshoe's workers fell ill. Horseshoe has thus failed to show that its workers' maladies resulted from the failure of Olin to operate its plant with reasonable care.

## III.

### *Conclusion*

Horseshoe has failed to submit summary judgment evidence sufficient to show that Olin is responsible for the illnesses to its workers or for the resulting construction delays to its riverboat. The proper standard of liability is negligence and Horseshoe is unable to meet the elements of that standard, either through direct offerings of proof or by circumstantial evidence under the doctrine of <u>res</u> <u>ipsa</u> <u>loquitur</u>. We thus affirm the district court's grant of summary judgment.

AFFIRMED