## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50324

United States Court of Appeals
Fifth Circuit

**FILED**

June 4, 2020

Lyle W. Cayce
Clerk

RACHEL ESCAMILLA,

      Plaintiff - Appellant

v.

PAMELA ELLIOTT; EDWARDS COUNTY, TEXAS,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
2:16-CV-121

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Rachel Escamilla appeals the district court's summary judgment dismissal of her claims and denial of her motion seeking leave to amend her complaint. We AFFIRM in part, and REVERSE and REMAND in part.

I.

From October 2012 to early August 2014, Plaintiff-Appellant Rachel Escamilla (hereinafter, "Plaintiff" or "Escamilla"), a Hispanic woman, was employed by the Edwards County Sheriff's Department, working as a jailer

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and dispatcher at the county jail.[1] On August 5, 2014, Sheriff Elliott dishonorably discharged Escamilla from employment, contending she had unlawfully "looked up a license plate without a valid reason."[2] Denying any wrongdoing, Escamilla appealed her termination to the Texas Commission on Law Enforcement (TCOLE). Finding insufficient evidence of misconduct, the TCOLE ordered that Escamilla's discharge status be changed from dishonorable to honorable. In addition to terminating her employment, Escamilla alleges that Sheriff Elliott unsuccessfully pursued criminal charges against her on two occasions. With the latter attempt, in spring 2016, Sheriff Elliott herself presented her claims to the grand jury, which issued a "no bill."

Believing herself to have been terminated, and subject to possible indictment, because she had engaged in constitutionally protected speech and is Hispanic, Escamilla filed suit against Sheriff Elliott, in the sheriff's individual and official capacities, and Edwards County (collectively "Defendants"), on August 4, 2016. She claims Sheriff Elliot, a white female, "has a history of using her position in law enforcement to target Hispanic females and accuse them of crimes with little or no evidence," in addition to discriminating against the Hispanic women who work in the Sheriff's Department. Escamilla's complaint alleges original jurisdiction under 28 U.S.C. § 1331—with her action "being brought under 42 U.S.C. § 1981 and

---

[1] The Sheriff's Department employees included 5 deputies, as well as the 10 jailer/dispatchers, and a jail administrator. The jailers' duties are widespread, apparently including everything from jail security and maintenance to booking, feeding, and dispensing medicine to prisoners. Although the jail occasionally had 10–15 inmates at a given time, the usual occupancy, during Escamilla's tenure was 7–10. In addition to working at the jail, Escamilla also worked as an EMT for the Edwards County EMS. Tamara Whitworth, who worked as the jail administrator prior to being demoted to jailer/dispatcher, did the same. Thus, Escamilla and Whitworth were co-workers both at the County jail and with County EMS.

[2] Apparently jail personnel (presumably those handling dispatch duties) were supposed to obtain this information only upon request from a deputy.

No. 19-50324

§1983"—and supplemental jurisdiction under 28 U.S.C. § 1367 over Texas law claims. The complaint also enumerates four "causes of action": (1) 42 U.S.C. § 1981 violations (denial of "equal rights and benefits because of her race"); (2) First Amendment violations; (3) Texas Constitutional Violations; and (4) Malicious Prosecution; and seeks injunctive and monetary relief, including actual and punitive damages, and attorney's fees.

On December 29, 2017, Defendants filed a summary judgment motion seeking dismissal of Escamilla's claims. On September 6, 2018, the assigned magistrate judge issued a report and recommendation ("R&R") that all of Escamilla's claims, except for her request for injunctive relief under the Texas Constitution, be dismissed. Having considered the parties' objections to the R&R, the district court approved and adopted it on September 28, 2018, granting summary judgment in Defendants' favor relative to Escamilla's federal law claims and her claim for monetary relief under the Texas Constitution. Thereafter, on March 18, 2019, considering that all of Escamilla's federal law claims had been dismissed and numerous criminal matters remained pending on its docket, the district court exercised its discretion, pursuant to 28 U.S.C. § 1367, to dismiss without prejudice the single remaining state law claim. In that same order, the district court also denied the motion for leave to file an amended complaint that Escamilla had filed, on September 19, 2018, seeking to remedy pleading deficiencies noted in the September 6, 2018 R&R. This appeal followed.

II.

On appeal, Escamilla contends the district court erred in dismissing her 42 U.S.C. § 1981 claim based on a determination that it was improperly pleaded as a "freestanding § 1981 damages claim," rather than as a § 1981 claim asserted against a state actor "through" the damages remedy provided

3

No. 19-50324

by 42 U.S.C. § 1983.[3]  Considering the record before us, we agree. In *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701 (1989), the Supreme Court held that the "action at law" provided by § 1983 (for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws") is the exclusive federal damages remedy for a violation of the rights guaranteed by § 1981 when the claim is pressed against a local government actor.[4]  Thus,

---

[3] Regarding the discrimination prohibited by § 1981, the Supreme Court has concluded, based on the statute's history, that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 613 (1987).

[4]  42 U.S.C. § 1981 and § 1983 provide, in pertinent part:

**§ 1981. Equal rights under the law**

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

**§ 1983 Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

plaintiffs *must* assert causes of action against local government actors under § 1983 in order to obtain a monetary remedy for violations of civil rights protected by § 1981.  In other words, plaintiffs cannot assert an *independent* cause of action under § 1981 against state actors; the § 1981 right must instead be asserted by means of the § 1983 procedural remedy.[5]

*Jett'*s holding has resulted in the dismissal of claims asserting violations of § 1981 by local government actors when the pertinent provisions of the complaint alleging that violation do not clearly and expressly also allege §1981's requisite linkage with § 1983 by citing to § 1983.  *See Meyers v. La Porte Indep. Sch. Dist.,* 277 F. App'x 333, 335 (5th Cir. 2007) ("Because Meyers brought her § 1981 claim independently of her § 1983 claim, the district court did not err by granting summary judgment to LPISD."); *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002) (where Count Three's § 1983 claim asserted only Fifth and Fourteenth Amendment violations, and Count One's § 1981 claim was independent and did not include § 1983, Count One failed to state a claim).

In the instant appeal, the district court—citing this court's decisions in *Oden v. Oktibbeha Cty., Miss.,* 246 F.3d 458, 464 (5th Cir. 2001) (Oden could not maintain an independent cause of action under § 1981 against county and sheriff in his official capacity), *Meyers,* and *Felton*—found the allegations of Escamilla's complaint insufficient to allow monetary relief to be sought against a government actor for a violation of the rights provided by § 1981.

---

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

[5] In the context of § 1981 violations by *private* actors, the Supreme Court has implied a damages remedy to effectuate the declaration of rights contained in that provision because Congress has not established a remedial scheme by statute. *Jett*, 491 U.S. at 731.

No. 19-50324

Accordingly, it dismissed Escamilla's § 1981 claim, identified as the first cause of action, without further discussion.

Escamilla argues the district court erred in doing so because paragraph 43 of her complaint incorporates paragraphs 1–42 and paragraph 4 states that the action is "brought under 1981 and 1983."[6] Moreover, Escamilla argues, the

_____

[6] The pertinent provisions of the original complaint state:

### III.
### JURISDICTION AND VENUE

4.   This Court has original jurisdiction to hear this complaint under  28 U.S.C. § 1331, this action being brought under 42 U.S.C. § 1981 a n d § 1983.

### V.
### FIRST CAUSE OF ACTION: 42 U.S.C. § 1981 VIOLATIONS

43.  Plaintiff incorporates paragraphs 1–42 as if restated herein.

44.  Plaintiff was denied equal rights and benefits under § 1981 because of her race.

45.  Defendants denied Plaintiff equal rights when, among other things, they terminated Plaintiff and sought criminal indictment against her.

### VI.
### SECOND CAUSE OF ACTION: FIRST AMENDMENT VIOLATIONS

46.  Plaintiff incorporates paragraphs 1-42 as if restated herein.

47.  Plaintiff engaged in protected speech as a citizen concerning a matter of public concern when she complained about misconduct and falsification of documents by Tammy Whitworth to Sheriff Elliott.

48.   Defendants were motivated by Plaintiff's speech to terminate her.

49.  Sheriff Elliott is individually liable under 42 U.S.C. § 1983 because free speech is a clearly established constitutional right, which precludes qualified immunity.

50.  Edwards County is liable under 42 U.S.C. § 1983 because it officially adopted and promulgated the decision to terminate Ms. Escamilla for engaging in protected speech.  The County is also liable because the decision to terminate Ms. Escamilla was made by official to whom the County had delegated policy-making authority.

51. Defendants violated the United States Constitution when it terminated Plaintiff and sought criminal indictments for engaging in protected speech.

No. 19-50324

Supreme Court's decision in *Johnson v. City of Shelby*, 574 U.S. 10, 10–12 (2014) (overturning Fifth Circuit precedent requiring plaintiffs to specifically invoke § 1983 in asserting a Fourteenth Amendment violation), as well as this court's unpublished decision in *Graham v. Bluebonnet Trails Co.,* 587 F. App'x 205 (5th Cir. 2014)*,* have cast doubt on the formalistic approach taken by earlier cases in this circuit. In *Graham,* the panel, though affirming on different grounds, expressed its "doubts about the district court's denial of [the plaintiff's] section 1981 claim on the ground that she did not cite section 1983 as the procedural vehicle for asserting such a claim, particularly after the Supreme Court's decision in *Johnson v. City of Shelby*." 587 F. App'x at 206 (internal citations omitted). In *Johnson v. City of Shelby*, the *Graham* panel explained, "the [Supreme] Court noted that the Federal Rules of Civil Procedure do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.*

Escamilla's complaint certainly is not a model of clarity.[7] For instance, although § 1983 is expressly cited within the "Second Cause of Action: First Amendment Violations" section, the same is not true for the "First Cause of Action: 42 U.S.C. § 1981 Violations" section. Nevertheless, paragraph 4 identifies the "action," not simply a single "claim" or "cause of action," as "being brought under 42 U.S.C. § 1981 and § 1983." Furthermore, the asserted factual bases of the alleged § 1981 equal rights violations are sufficiently clear, and

---

[7] Rules 8 and 12 of Federal Rules of Civil Procedure require only that a complaint include sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Nevertheless, litigants are, of course, encouraged to plead that which is appropriate, pertinent, and clarifying, relative to their claim, rather than merely providing only the bare minimum required by law.

the law is well-settled that § 1983 provides the only federal damages remedy against local government actors for violations of § 1981. Thus, considering Escamilla's complaint against the backdrop of *Johnson v. City of Shelby,* we reverse the district's court's dismissal with prejudice of Escamilla's claim seeking relief for alleged violations of her § 1981 rights. *See also Smith v. Barrett Daffin Frappier Turner & Engel, LLP,* 735 F. App'x 848, 854 (5th Cir. 2018) (citing *Johnson v. City of Shelby*) ("It bears emphasizing that factual allegations alone may state a claim for relief—even without referencing the precise legal theory (or statute) upon which the plaintiff seeks relief.").[8] Nevertheless, although we find reversal warranted in this instance, we emphasize that we have not determined that Escamilla's allegations necessarily otherwise state a plausible claim for relief or are sufficient to survive summary judgment. That will be for the district court to decide on remand.  Rather, our narrow ruling regarding this claim is limited solely to the district court's application of this pleading formality in the instant matter.

## III.

As her second cause of action, Escamilla  contends that her termination (dishonorable discharge) from employment was, in part, retaliation for having exercised her First Amendment free speech rights. On appeal, Escamilla

---

[8]   We note this court's April 2020 unpublished decision in *Montgomery-Smith v. Louisiana Dep't of Health & Hosps*., No. 18-30987, 2020 WL 1907546 at *3 (Apr. 17, 2020), wherein another panel of this court, citing *Felton v. Polles*, 315 F.3d 470, 482-83 (5th Cir. 2002), affirmed the district court's dismissal of that plaintiff's § 1981 cause of action. The panel reasoned that the § 1983 claim asserted there lacked language incorporating the § 1981 claim, and the § 1981 claim otherwise failed because it was pleaded independently of the § 1983 cause of action. *Montgomery-Smith* is distinguishable and, as an unpublished opinion**,** does not constitute controlling precedent under our rule of orderliness. *See* 5th Cir. R. 47.5.4; *United States v. Alcantar,* 733 F.3d 143, 145 (5th Cir. 2013) ("Under our rule of orderliness, only an intervening change in the law (such as by a Supreme Court case) permits a subsequent panel to decline to follow a prior Fifth Circuit precedent.")

maintains the district court erred in dismissing her First Amendment retaliation claim, asserted pursuant to 42 U.S.C. § 1983, based on a determination that the statements in question were not made in Escamilla's capacity as a "private citizen on a matter of public concern" and were not constitutionally protected speech.

It is well settled that "public employees do not surrender all First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Rather, some speech, even if it "concerns information related to or learned through public employment," deserves protection because "[g]overnment employees are often in the best position to know what ails the agencies for which they work." *Lane v. Franks*, 573 U.S. 228, 236 (2014). Yet, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Malin v. Orleans Par. Commc'ns Dist.*, 718 F. App'x 264, 268 (5th Cir. 2018) (quoting *Garcetti*, 547 U.S. at 418). In determining whether a public employee's speech is protected by the First Amendment, courts must balance these countervailing interests.

The Supreme Court has enunciated a two-step process to guide this inquiry:

> The first step requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the

No. 19-50324

> speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

*Garcetti,* 547 U.S. at 418.

The district court ended its inquiry at the first step upon finding that "Plaintiff's speech was not 'made by a private citizen about a matter of public concern.'" As explained by the district court, the controlling factor in this first step is whether Escamilla's speech was made "pursuant to [her] duties" as a "jailer/dispatcher" for Edwards County. *Garcetti,* 547 U.S. at 421. While relevant, Escamilla's "formal job description" and "the fact that the speech relates tangentially to the subject matter of [her] employment" are not dispositive. *Davis v. McKinney,* 518 F.3d 304, 312 (5th Cir. 2008).[9]

Escamilla contends that her termination was, in part, retaliation for having exercised her First Amendment free speech rights on four particular occasions:

> (1) On June 4, 2014, Plaintiff spoke on the phone to Joanna Reyes, a fellow jailer/dispatcher, and related that [then-Jail Administrator Tamara] Whitworth was not doing what she was supposed to be doing to book an inmate in the jail, particularly with respect to one inmate who was booked in the jail without a commitment ("the Booking Statement")

---

[9] According to Defendants' interrogatory responses:

The duties of a jailer include booking, maintaining order in the jail, conducting observations of inmates, feed[ing] the inmates, assist[ing] with inmate medications, clean[ing] cells and other related duties. The duties of telecommunicators [dispatchers] receive and dispatch emergency and non-emergency police, fire and ambulance personnel. They answer emergency and non-emergency calls, gather information, and dispatch appropriate emergency services.

No. 19-50324

(2) The next day, <u>on June 5, 2014</u>, Plaintiff talked about "Sheriff's office information" [the same matter discussed on June 4] to Joanna Reyes ("the <u>Office Information Statement</u>")

(3) On <u>July 12, 2014</u>, Plaintiff complained to Sheriff Elliott that Whitworth was circumventing jail procedures and falsifying documents to obtain medical treatment for her son who was an inmate in the jail at the time ("<u>the Medical Treatment Statement</u>")

(4) On <u>July 31, 2014,</u> while working an EMS shift, Plaintiff told Whitworth how surprised she was that no one had been arrested for assaulting Deputy Jason Reed in an incident where Reed's gun had been taken by the assailant and that Sheriff Elliott was "keeping it quiet" ("<u>the Assault Statement</u>").

Examining these statements under applicable legal principles, we find no error in the district court's determination.

<u>June 4-5, 2014—"Booking Statement" and "Office Information Statement"</u>

Escamilla's June 4, 2014 and June 5, 2014 statements are telephone conversations that she had, while on duty at the jail, with fellow jailor/dispatcher, Joanna Reyes. The statements concerned apparent discrepancies that Escamilla alleged she had observed in Whitworth's handling of booking duties and related paperwork, in her role of job administrator, that could impact Escamilla's and Reyes' duties as jailers. The conversation occurred while Reyes was at home, off-duty, because she was not scheduled to work a shift on those days. According to Escamilla, two persons (two jailer/dispatchers or one jailer/dispatcher and the jail administrator (Whitworth)) worked each shift. Thus, it is logical that Escamilla apprised Reyes of ongoing work matters at a time when Escamilla was on duty but Reyes was not.

11

No. 19-50324

Under these circumstances, the district court did not err in concluding that Escamilla had spoken to Reyes, a co-worker, as an employee, rather than as a private citizen. Although Escamilla's job did not necessarily demand that she make such complaints, the subject of the statements bore on her (and Reyes') ability to carry out the duties that her job did require—booking and processing inmates. *See Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693–94 (5th Cir. 2007) ("Simply because [the plaintiff] wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job." Rather, because his speech was related to "information so that he could properly execute his duties," it was not protected). Furthermore, that the subject of the conversation concerned a public employee's job performance does not automatically make it a matter of "public concern." *See Connick v. Myers*, 461 U.S. 138, 149 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case.")

### July 12, 2014—"Medical Treatment Statement"

Escamilla's third alleged instance of protected speech is her July 12, 2014 complaint to Sheriff Elliott regarding Whitworth's proclaimed misconduct in administering medicine to inmates*, i.e.,* that Whitworth was circumventing jail procedures and falsifying documents to obtain medical treatment for her son, who was an inmate of the jail at the time, rather than other inmates. The district court properly concluded that medical treatment of inmates is undoubtedly a topic of public concern, particularly when it involves allegations of corruption and misconduct. *See Anderson v. Valdez*, 845 F.3d 580, 595 (5th Cir. 2017) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of . . . officials, in

No. 19-50324

terms of content, clearly concerns matters of public import") (internal citations omitted).  Even so, the First Amendment does not protect speech made in the course of a public employee's duties. *Anderson,* 845 F.3d at 595–98. Accordingly, the district court properly considered that this speech was:

> [O]n-duty during her regular work hours, concerning information she learned at work, the situation reported affected Plaintiff's ability to perform her official work duties [*e.g.*, assist with inmate medications] as a jailer, and the information initially was reported privately, one-on-one, within her chain of-command, to the Sheriff who is the ultimate responsible authority for the administration of the jail in Edwards County.

Furthermore, "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Davis*, 518 F.3d at 313. *But id.* (If job concerns are *also* reported outside the workplace, the external communications are ordinarily made as a citizen rather than employee).  As the district court noted, Escamilla "did not make an effort to illuminate the public of this conduct by reporting it to a person outside her chain of command, and therefore, they were not made . . . as a private citizen."

### July 31, 2014—"Assault Statement"

Finally, the district court did not err in finding that Escamilla's  fourth alleged instance of protected speech—her comments to Whitworth concerning Sheriff Elliott's handling of an assault of a deputy whose gun had been taken by the assailant—was not made as a private citizen on a matter of public concern.  While public safety undoubtedly is a matter of public concern, other factors preclude these communications from being protected speech offered by a private citizen. Although the conversation occurred when both Escamilla and Whitworth were off-duty from the jail, and instead working an EMS shift, it remained a conversation between Sheriff's Department co-workers regarding

13

No. 19-50324

their boss's job performance, rather than a conversation with a member of the public. Lastly, the statement was not bolstered by any accompanying factual information, and thus constituted little more than a statement of unsupported personal opinion or speculation.

## IV.

Escamilla likewise appeals the district court's dismissal of her malicious prosecution claim, as well as the district court's denial of her motion requesting leave to amend her complaint relative to that claim.[10] We find no error in either ruling.

The United States Constitution does not provide a "freestanding" right of freedom from malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003). Thus, "causing charges to be filed without probable cause will not without more violate the Constitution." *Id.* at 953. Instead, stating a malicious prosecution claim under federal law requires officials to have violated specific constitutional rights in connection with a malicious prosecution. *Cuadra v. Houston Indep. School. Dist.,* 626 F.3d 808 (5th Cir. 2010). As set forth in paragraphs 57–63 of her complaint, Escamilla's malicious prosecution allegations fail to assert a federal constitutional violation.

Attempting to avoid dismissal of her claim, Escamilla emphasizes that paragraph 57 of her complaint incorporates paragraphs 1–56 by reference, and that paragraphs 37 and 38 allege that of the four persons terminated from the Sheriff's Department for the same crime of (allegedly) unlawfully releasing confidential information, "Sheriff Elliott only pursued criminal charges against

---

[10] Escamilla's appeal of the district court's denial of her motion seeking leave to amend her complaint includes a proposed amendment of her § 1981 claim. Specifically, Escamilla sought to amend her complaint to include an express statement confirming that her § 1981 claim was asserted pursuant to § 1983's procedural vehicle. Given our reversal of the district court's dismissal of Escamilla's § 1981 claims on grounds that it lacked the necessary linkage with § 1983, this aspect of her appeal is moot.

the Hispanic female, Ms. Escamilla." She adds: "The Sheriff's actions were based on race. . . ." Referencing these allegations, Escamilla contends that the pleading alleges a "class-of-one" Fourteenth Amendment equal protection claim of the sort recognized in *Village of Willowbrook v. Olech,* 528 U.S. 562, 563 (2000), thus providing the requisite federal constitutional violation necessary for a federal malicious prosecution claim. In *Village of Willowbrook,* the plaintiff stated a viable equal protection constitutional claim based on allegations that the Village demanded a 33-foot easement from the plaintiff, but only a 15-foot easement from everyone else, and that the demand was "irrational and wholly arbitrary."

The district court rejected this argument, first urged in response to Sheriff Elliott's summary judgment motion, concluding the malicious prosecution allegations of the complaint fall short of providing adequate notice of Escamilla's avowed "equal protection" constitutional claim. The district court additionally concluded that Escamilla had not timely sought to remedy the claim's constitutional deficiencies by amendment, and thus denied Escamilla's motion requesting leave to amend her complaint.

The parties dispute whether the proposed amendment is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.3d 595, 597–98 (5th Cir. 1981) (Rule 15(a) amendments); *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA,* 315 F.3d 533, 536 (5th Cir. 2003) (Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired). Nevertheless, they agree that we review the district court's denial of leave to amend for an abuse of discretion. *Dussouy,* 660 F.3d at 597; *S&W Enterprises, L.L.C.,* 315 F.3d at 535. They likewise agree that leave to amend a pleading may be justified where the party seeking amendment has engaged in undue delay. *Dussouy,* 660 F.3d at 598. Here, in denying the motion, the district court emphasized

the "lengthy delay between filings" and that "[p]laintiffs should not await a court's decision prior to attempting to amend a faulty complaint." On the record before us, we find no abuse of discretion.

As noted by the district court, the motion for leave to amend was not filed until September 2018—two years after the original complaint was filed in August 2016. In this instance, a fair reading of the malicious prosecution cause of action described in paragraphs 57–63 of the complaint suggests nothing more at issue than an assertion of prosecution without probable cause. Indeed, it is not even readily apparent from the August 2016 pleading that Escamilla intended to assert a *federal* malicious prosecution claim, as opposed to one asserted under state tort law.

In any event, given that Sheriff Elliott's narrow assessment of the scope of the claim was revealed in the December 2017 summary judgment motion, and acknowledged by Escamilla in her February 2018 opposition memorandum, we cannot fault the discretionary decision of the district court to deny a motion to amend not filed until *seven* months later in obvious response to the magistrate judge's issuance of a report and recommendation for dismissal thirteen days earlier. *See Reliance Ins. Co. v. Louisiana Land & Expl. Co.,* 110 F.3d 253, 258 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.") Had Escamilla promptly sought to amend her claim in response to deficiencies raised *nine* months earlier in Sheriff Elliott's summary judgment motion, the issues in dispute might have been streamlined, resources likely would have been conserved, and final resolution might have been

expedited.[11] Furthermore, Escamilla's motion for leave to amend offered no explanation for (or even acknowledgement of) the delay.

Finally, even if amendment had been allowed, dismissal of the malicious prosecution still would have been warranted.  As noted by the district court's order, Escamilla has never alleged (or sought to allege) that she was arrested or formally charged with a crime.  Sheriff Elliott's attempts to convince the grand jury to issue an indictment failed and Escamilla was never charged by bill of information.  Thus, it is not apparent that the "institution of prosecution" element of a malicious prosecution claim could have been satisfied.

V.

As stated herein, we conclude that Plaintiff-Appellant Escamilla's August 2016 complaint sufficiently links her allegations of a violation of the rights protected by 42 U.S.C. § 1981 to the procedural remedy provided by 42 U.S.C. § 1983.  Accordingly, we REVERSE and REMAND that portion of the district court's judgment for further proceedings consistent with this ruling.  We otherwise AFFIRM the judgment of the district court.

---

[11] To be sure, the "more than 1,800 pending criminal defendants on its docket that take priority over all civil matters" referenced by the district court in explaining the decision to dismiss the single remaining state law claim without prejudice, rather than continuing to exercise supplemental jurisdiction, more than adequately demonstrate the importance of efficient use of judicial resources.